Felicia Medina (SBN 255804)
fmedina@sanfordheisler.com
Chioma Chukwu (SBN 288502)
cchukwu@sanfordheisler.com
SANFORD HEISLER, LLP
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 795-2020 (main)
(415) 795-2021 (fax)

*Attorneys for the Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARA WELLENS, KELLY JENSEN, JACQUELINE PENA, BERNICE GIOVANNI, LARA HOLLINGER, and JENNIFER BENNIE on behalf of themselves and all others similarly situated,<br><br>**PLAINTIFFS**,<br><br>v.<br><br>DAIICHI SANKYO, INC.<br><br>**DEFENDANT**. | Case No. C 13-00581 WHO (DMR)<br><br>**JOINT DISCOVERY DISPUTE LETTER SUBMITTED PURSUANT TO MINUTE ENTRY (DKT. NO. 68)** |

Dear Judge Orrick:

The Parties respectfully submit this joint letter pursuant to the Court's February 12, 2014 Order. *See* Dkt. No. 68. DSI served written discovery requests on the 17 individuals who opted in as Plaintiffs as of December 20, 2013. *See, e.g.*, Ex. A. DSI seeks to depose 10 of the opt-ins about their Equal Pay Act ("EPA") claims, subject to additional limitations as discussed below in Defendant's portion of this correspondence. Plaintiffs object to DSI's request to conduct opt-in discovery before an EPA class has been conditionally certified. The Parties have met and conferred in order to resolve this issue and have been unable to reach an agreement.

**Plaintiffs' Position:**

Per FRCP 26, DSI's request for pre-certification opt-in discovery should be denied. It is premature to engage in resource intensive and unnecessary opt-in discovery before the Court has ruled on Plaintiffs' Motion for Conditional Certification ("Motion"), which Plaintiffs anticipate filing in the near future. The discovery DSI seeks is burdensome, a waste of resources, prejudicial to Plaintiffs, and would further delay resolution of this case. Conducting opt-in discovery at this stage also contravenes the broad remedial purposes of the EPA amendments to the Fair Labor Standards Act ("FLSA") and its collective action devices. The Court should deny DSI's request for opt-in discovery until after it rules on Plaintiffs' Motion and notice has been sent to the class. At that time, the full opt-in universe will have been determined and the Parties can submit a customary sampling discovery plan to the Court.

    A.    **DSI's Request for Opt-In Discovery Is Premature and Unnecessary; It Contravenes the Remedial Purpose of the FLSA/EPA.**

DSI's opt-in discovery requests are untimely and unnecessary. There is no immediate need for the information Defendant seeks, especially given Plaintiffs' forthcoming Motion. During the first step of the EPA certification (conditional certification), Plaintiffs must only make a *minimal* showing that the class members are similarity situated and subjected to common policies.[1] *See Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). For this reason, courts in this district do not consider evidence provided by defendant-employers in determining whether to grant conditional certification during the first step in the process. *Id.* at 1128. DSI's competing evidence only comes into play *after* discovery is complete and when DSIs move for decertification. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal. 2010); *see, e.g.*, *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753 (N.D. Cal. July 18, 2012). Accordingly, the opt-in discovery requests are premature.

Indeed, compelling opt-in discovery at this time would undermine the purpose of the collective action device, which was designed to ensure efficient prosecution and vindication of EPA/FLSA claims. In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the USSC held that "Congress has stated its policy that [] plaintiffs should have the opportunity to proceed collectively" by "lower[ing] individual costs to vindicate rights by the pooling of resources" and to permit the issuance of class notice. As a result, courts have denied individualized opt-in discovery in order to safeguard the public purpose of the EPA/FLSA and the corresponding efficiencies of the statutorily enacted collective action mechanisms.[2] Courts typically limit discovery to a sample of

---

[1] The EPA incorporates the FLSA's collective action provisions. Federal courts nationwide have adopted a two-step approach to conditional certification. *See Sanchez*, *supra*. During the first step, courts decide the propriety of collective treatment and whether to disseminate notice. The evidence required for this determination is demonstrably low. *Id.* at 2. The court engages in a "more searching inquiry" during the second step – the stage initiated by an employer's motion to decertify *after* discovery is complete. *Id.*

[2] *See Cranney v. Carriage Serv., Inc.*, No. 2:07-CV-01587-(RLH) PAL, 2008 WL 2457912 (D. Nev. June 16, 2008) (denying discovery; recognizing that individualized opt-in discovery undermines the purpose and usefulness of

the full universe of the opt-in plaintiff class *after* conditional certification has been granted and/or the parties *agree* to commence opt-in discovery after the notice period closes. *Cranney supra,* fn. 2. There is no reason here to stray from this traditional and routine discovery timeline.

The Court should also reject Defendant's argument that opt-ins are party-plaintiffs subject to the full range of discovery under the Federal Rules. *See Beery v. Quest Diagnostics, Inc.*, No. 12-CV-00231 KM MCA, 2013 WL 3441792, at *3 (D.N.J. 2013) (interpreting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013); holding that opt-in plaintiffs who filed consents-to-join without conditional certification or court-ordered notice were not party-plaintiffs). Indeed, the cases cited by Defendant regarding this issue are readily distinguishable – in such cases, the opt-in discovery was conducted after the employer moved for decertification; the opt-in testimony was submitted by the plaintiffs; and the parties agreed to conduct limited pre-certification discovery. *See* DSI's cases *infra*.

### B.   Pre-Certification Opt-in Discovery Is Inefficient and Burdensome.

DSI's professed need for opt-in discovery is outweighed by the burden and expense it would impose on Plaintiffs. DSI has already deposed all of the Named Plaintiffs and has asked to depose non-named opt-in Plaintiffs who reside in California, Iowa, Georgia, Alabama, West Virginia, Arizona, Texas, and North Carolina. Plaintiffs anticipate that more women will opt in, especially after notice of the collective action is issued, and that defendant will seek to depose them as well. To save time and travel expenses, the Parties should develop an appropriate sampling opt-in discovery plan *after* the full scope of the opt-in class is determined after the notice period ends. This would allow the Parties to conduct discovery in a more efficient and cost-effective manner (*e.g.*, scheduling depositions in blocks according to location, rather than repeatedly crisscrossing the country).

DSI's proffered authority is unavailing. In *Luksza v. TJX Co., Inc.,* No. 2:11-CV-01359-JCM, 2012 WL 3277049 (D. Nev. Aug. 8, 2012), opt-in discovery was granted *after* the plaintiffs filed for conditional certification. More importantly, the plaintiffs did not object to pre-certification opt-in discovery because it imposed little burden on plaintiffs. There, the opt-ins were centrally located and had all worked at the same regional distribution center. *See id.*, Dkt. No. 30-1. That is not the case here.

Contrary to Defendant's assertions, its written discovery requests are not tailored to the opt-in Plaintiffs' EPA claims. *See, e.g.*, Ex. A. Nor does DSI's purported compromise – limiting the depositions to four hours and only asking about the opt-ins' EPA claims – sufficiently quell the burden. The opt-ins are also members of the Title VII class. DSI will likely seek to re-depose these plaintiffs on their Title VII claims at a later date. Plaintiffs do not have the resources to defend out of state depositions more than once – nor should they have to defend depositions that are unnecessary at this time. Rather, depositions of any of the class members should occur once and cover all their claims after the notice period ends.

### C.   Opt-in Discovery Is Prejudicial to Plaintiffs.

DSI's attempt to accelerate opt-in discovery prior to conditional certification is unfair and prejudicial to Plaintiffs. If DSI is allowed to conduct opt-in discovery now, it will likely argue that the Court should consider its evidence and apply the heightened standard normally invoked during

---

collective actions); *Prentice v. Fund for Pub. Interest Research, Inc.,* No. 06-7776, 2007 WL 2729187, at *5 (N.D. Cal. 2007) ("[i]ndividualized discovery is rarely appropriate in FLSA collective actions"); *Adkins v. Mid-Amer. Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) (holding individualized discovery violates public policy by discouraging class members from asserting their claims); *McGrath v. City of Philadelphia*, at *2-3 (finding that allowing individualized discovery "would only serve to obfuscate the issues and drastically enhance the costs of litigation").

the decertification stage. Such an approach would be highly prejudicial to Plaintiffs, and courts in this district have uniformly rejected employers' attempts to circumvent the two step process to prevent notice from being issued to the class.[3]

Moreover, granting pre-certification opt-in discovery would also exacerbate what is already an asymmetrical discovery advantage. As the employer, DSI enjoys sole possession of most relevant documents and unfettered access to prospective class members.[4] Plaintiffs have reason to believe that DSI has been using such access to conduct informal, one-sided discovery (*e.g.*, interviews with potential opt-ins) in support of its motion for decertification and affirmative defenses.[5] DSI also claims it is entitled to opt-in discovery because Plaintiffs have received some discovery.[6] As previously discussed, because DSI has unilateral access to the majority of discovery in this case – such an argument is a red-herring and should not be countenanced.

### D. Conducting Opt-in Discovery Will Delay This Litigation.

Permitting opt-in discovery at this time would further delay this action. During the Parties' July 13, 2013 Case Management Conference, DSI agreed to produce specific categories of documents as part of Phase I discovery. DSI has produced documents on a rolling basis, but only started producing less self-serving documents after Plaintiffs repeatedly hounded them and the CMC date approached. DSI's Phase I production to-date remains deficient. DSI has attributed its delayed production to its preparation for the Named Plaintiffs' depositions. *See* Def. September 25, 2013 email ("while we will make every effort to produce [Phase I] documents as soon as possible, [] we currently are focused on completing any supplementary production that may be used in the upcoming plaintiff depositions"). Thus, granting DSI's discovery requests would only serve to further disrupt the completion of Phase I discovery.

For the forgoing reasons, Plaintiffs respectfully request that the Court deny DSI's requests for opt-in discovery.

**Defendant's Position:**

### A. Opt-In Discovery Is Not Premature.

Plaintiffs claim that the limited opt-in discovery Defendants seek is premature and should only take place after the court conditionally certifies a collective action. In other words, Plaintiffs contend that Defendant should not be permitted to marshal evidence necessary to defend against Plaintiffs' anticipated motion for conditional certification, and that it should not be able to test the veracity of the allegations of individuals who—*before* Plaintiffs even filed their motion—filed a pleading with the Court averring that they want to participate as plaintiffs in the present lawsuit. Plaintiffs are wrong.[7]

---

[3] *See, e.g.*, *Sanchez*, at * 4; *Harris v. Vector Mktg. Corp.*, 716 F.Supp.2d 835, 841 (N.D. Cal. May 18, 2010); *Labrie v. UPS Supply Chain Solutions, Inc.*, No. C 08–3182 PJH, 2009 WL 723599, at *5–7 (N.D. Cal. May 18, 2010); *Gilbert v. Citigroup, Inc.*, No. C 08–0385 SC, 2009 WL 424320, at *4 (N.D. Cal. Feb. 18, 2009).

[4] Notably, DSI has refused to provide Plaintiffs with a class list. *See* Joint Letter, Dkt. No. 64.

[5] *See* Joint Letter, n. 4. Dkt. No. 64.

[6] DSI may tout that it has produced over 25,000 pages of documents. However, of the documents produced to-date, roughly 60% are documents specific to the Named Plaintiffs, 20% are policy-related documents, and the other 20% are discrimination complaints.

[7] Courts regularly subject opt-in plaintiffs to the full range of discovery. *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1244 (11th Cir. 2008) (approving the decision to allow the depositions of 250 opt-in plaintiffs); *Abubakar v. City of Solano,* No. CIV S-06-2268 LKK EFB, 2008 WL 508911, *2 (E. D. Cal. Feb. 22, 2008) (allowing depositions of all 160 opt-in plaintiffs); *Williams v. Sprint/United Mgt. Co.,* No. 03-2200-JWL, 2006 WL 1867471 (D. Kan. June 30, 2006) (declining to restrict depositions even though the defendant had already deposed 300 opt-ins).

Opt-in Plaintiffs are parties to this litigation and as such, have an obligation to participate in discovery.[8]  Section 216(b), which applies to the EPA, unambiguously makes plain that, when a person opts in to a collective action, she becomes a "party plaintiff." *See* 29 U.S.C. § 216(b) ("No employee shall be a *party plaintiff* to any such action unless he gives his consent in writing to become such a party.") (emphasis added).  Indeed, these individuals explicitly acknowledged this when they filed their consent forms, providing "consent to . . . become party plaintiff" and stating "I . . . agree to . . . become a plaintiff."  Thus, for EPA discovery purposes, there is no difference between Plaintiffs and "opt ins."  They are all "party plaintiffs."[9]  "Having affirmatively opted into this action, as opposed to being absent members of a Rule 23 class action, these plaintiffs . . . have agreed to the discovery procedure at issue.  As such, they cannot sit on the side-lines and ignore discovery obligations imposed by this Court." *Brennan v. Qwest Commc'ns Int'l, Inc.,* No. 07-2024, 2009 WL 1586721, at *18 (D. Minn. June 4, 2009); *see also Green v. Harbor Freight Tools, USA, Inc.*, No. 09-2380-JAR, 2010 WL 686263 (D. Kan. Feb. 23, 2010) (granting defendants' request to depose additional opt-in plaintiffs prior to conditional certification because the depositions were not unduly burdensome and were useful to "test the veracity of the plaintiffs' mere allegation that they are similarly situated victims of a common decision, policy, or plan"); *Benedict v. Hewlett-Packard Co.*, No. C 13-0119 LHK (N.D. Cal. May 30, 2013) (Dkt. No. 60) (rejecting argument that opt-in plaintiffs should not be subject to discovery prior to conditional certification); *Luksza v. TJX Co.*, Inc., 2:11-CV-01359-JCM, 2012 WL 3277049, at *1 (D. Nev. Aug. 8, 2012) (noting that defendants deposed all opt-in plaintiffs prior to conditional certification); *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424 (N.D. Cal. 2010) (considering testimony from opt-in plaintiffs taken prior to conditional certification); *In re Wells Fargo Wage & Hour Emp't Practices Litig.*, H-11-2266, 2012 WL 3308880, at *2, 20 (S.D. Tex. Aug. 10, 2012) (noting that the court had ordered pre-certification discovery, including depositions of several opt-in plaintiffs); *Braun v. Superior Indus. Int'l, Inc.*, 09-2560-JWL, 2010 WL 3998034, at *1 (D. Kan. Oct. 4, 2010) (granting sanctions when opt-in plaintiffs' failed to attend depositions prior to conditional certification).

In short, DSI has the right to question each Plaintiff about her claim to develop its substantive defenses and determine the extent to which Plaintiffs are similarly situated to each other.  The best, most efficient way to achieve this objective is to require responses to the tailored requests for production and depositions of Opt-In Plaintiffs.  DSI agrees to limit the number, length, and scope of depositions at this stage of the case; specifically, it agrees to (1) limit each deposition to no more than four (4) hours; (2) limit the questioning to each Plaintiff's EPA claim; and (3) conduct the depositions where the witnesses are located or in some central location (e.g., in this District, where Plaintiffs elected to file their lawsuit), whichever is more convenient for Plaintiffs.  Any further limitation is unwarranted.

      **B.    The Discovery Sought Is Relevant to the Opt-in Plaintiffs' Individual Claims and Their Assertion that They are Similarly Situated.**

The "extremely broad" scope of Federal Rule of Civil Procedure 26(b) allows discovery into any matter "that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  As such, "discovery should be allowed unless the information sought has no conceivable bearing on the case." *Id.*

Plaintiffs already have sought - and DSI has provided - broad discovery relating to their EPA collective claim, including nationwide data for the proposed class/collective action and

---

[8] This is true regardless of whether the court eventually certifies a collective action.
[9] Notably, Plaintiffs' counsel has treated them as such, by seeking discovery related to their claims and communicating with DSI on their behalf.

extensive compensation-related policies and documents. DSI also anticipates there will be additional discovery related to Plaintiffs' EPA claim in the coming months, including ESI and corporate representative testimony regarding DSI's compensation practices. Against this backdrop, the discovery DSI seeks, by contrast, is minimal and bears directly on each Opt-In Plaintiff's individual claim, as well as Plaintiffs' broader assertion that they are similarly situated to each other and other sales representatives employed by DSI nationwide. *See, e.g.*, Def.'s First Set of Requests for Prod., attached as Ex. A. Precluding this discovery would severely hamper DSI's ability to show that Plaintiffs are not similarly situated and defend against Plaintiffs' certification motion. *See*, *e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124 (N.D. Cal. 2009) (considering testimony from depositions of opt-in plaintiffs in motion for conditional certification); *Castle v. Wells Fargo Fin., Inc.*, C 06-4347SI, 2008 WL 495705, at *2, 5 (N.D. Cal. Feb. 20, 2008) (denying conditional certification because "numerous individual issues . . . make certification inappropriate" and "would require individualized determinations."); *Rollins v. Ala. Comm. College Sys.*, No. 09-cv-636, 2010 U.S. Dist. LEXIS 113534 (M.D. Ala. Oct. 25, 2010) (denying conditional certification because the evidence did not show that plaintiffs were similarly situated to each other and to potential opt-in plaintiffs; that is, that they all performed work requiring equal skill, effort, and responsibility under similar working conditions).

## C. Plaintiffs Fail to Prove Improper Purpose, Undue Burden, or Expense.

Because Plaintiffs cannot legitimately dispute the relevance of the discovery sought, they must prove that a protective order is needed in the interest of justice, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063-64 (9th Cir. 2004) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). Moreover, "[a] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied." *Websidestory, Inc. v. Netratings, Inc.*, No. 06cv408 WQH(AJB), 2007 WL 1120567, at *2 (S.D. Cal. Apr. 6, 2007). "Absent *extraordinary circumstances*, it is very unusual for a court to prohibit the taking of a deposition." *Id.* at *2 (emphasis added). Plaintiffs cannot meet their burden here:

- DSI tailored the *seven* Requests for Production to seek only documents that bear on the legal standard associated with Opt-In Plaintiffs' EPA claims;
- DSI has given Plaintiffs significant notice before the depositions are to occur;
- DSI has offered to conduct depositions at locations convenient to the witnesses;
- DSI has proposed limiting the duration and scope of the questioning;
- Contrary to Plaintiffs' assertion regarding the sequencing of discovery, all such depositions would take place concurrently with other, ongoing discovery, and thus would in no way delay this case.

Although Plaintiffs baldly assert that this limited discovery is burdensome and inefficient because of unspecified costs and travel time, they proffer no authority to suggest—nor could they, in light of Defendant's narrowly tailored proposal—that these concerns outweigh Defendant's need for the requested discovery from individuals who voluntarily elected to participate in this case as party plaintiffs. Accordingly, the Court should deny Plaintiffs' Motion. *See* Fed. R. Civ. P. 26(c)(2); *Pac. Marine Ctr., Inc. v. Silva*, Case No. 1:09-cv-1409 LJO-GSA, 2010 WL 2754351, at *3 (E. D. Cal. July 9, 2010) (denying plaintiff's motion for a protective order to prevent her deposition because she had not shown good cause).

Dated: February 25, 2014                                    Respectfully Submitted,

/s/ *Felicia Medina*
Felicia Medina, on behalf of
Plaintiffs and the Class

/s/ *Sari M. Alamuddin*
Sari M. Alamuddin, on behalf of
Defendant