1  Felicia Medina (SBN 255804)
   fmedina@sanfordheisler.com
2  Chioma Chukwu (SBN 288502)
   cchukwu@sanfordheisler.com
3  **SANFORD HEISLER, LLP**
   555 Montgomery Street, Suite 1206
4  San Francisco, CA 94111
   Telephone: (415) 795-2020
5  Facsimile: (415) 795-2021

6  *Attorneys for Plaintiffs and the Class*

7

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9

10

11  SARA WELLENS, KELLY JENSEN,          No. C 13-00581 WHO (DMR)
    JACQUELINE PENA, BERNICE
12  GIOVANNI, LARA HOLLINGER, and        **PLAINTIFFS' NOTICE OF MOTION**
    JENNIFER BENNIE                      **FOR EQUAL PAY ACT**
13  on behalf of themselves and all others  **CONDITIONAL COLLECTIVE**
    similarly situated,                  **ACTION CERTIFICATION AND**
14                                       **AUTHORIZATION OF NOTICE**

15          **Plaintiffs,**

16  v.                                   DATE: April 16, 2014
                                         TIME: 2:00 PM
17  DAIICHI SANKYO, INC.                 JUDGE: Hon. William H. Orrick
                                         COURTROOM: 2, 17th Floor
18          **Defendant.**

19

20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE** that Plaintiffs Sara Wellens, Kelly Jensen, Jackie Pena, Bernice Giovanni, Lara Hollinger, and Jennifer Bennie, on behalf of themselves and all others similarly situated, hereby move the Court and the Honorable William H. Orrick for an order granting relief under the Equal Pay Act (EPA), 29 U.S.C. §§ 206(d) & 216(b), and authorizing the mailing of notice of this litigation to members of the proposed class of sales representatives and first level district managers.

This motion is based upon this notice, Plaintiffs' attached Memorandum of Law, the Declaration of Felicia M. Medina and the exhibits attached thereto, any oral argument that may be heard, and the record in this action.

Dated: March 6, 2014

/s/ Felicia Medina
Felicia Medina, Esq.
Chioma Chukwu, Esq.
SANFORD HEISLER, LLP
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

*Attorneys for the Plaintiffs and the Class*

Felicia Medina (SBN 255804)
fmedina@sanfordheisler.com
Chioma Chukwu (SBN 288502)
cchukwu@sanfordheisler.com
**SANFORD HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA WELLENS, KELLY JENSEN, JACQUELINE PENA, BERNICE GIOVANNI, LARA HOLLINGER, and JENNIFER BENNIE on behalf of themselves and all others similarly situated, | No. C 13-00581 WHO (DMR) |
| | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION** |
| **Plaintiffs,** | |
| v. | |
| DAIICHI SANKYO, INC. | |
| **Defendant.** | |

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL BACKGROUND ........................................................................2

       A. Defendant DSI and its Predominantly Male Sales Leadership Team....................2

       B. DSI's Male Sales Leadership Team Perpetuates a Culture of
          Discrimination........................................................................................5

       C. The EPA Collective is Comprised of Sales Representatives and District
          Managers ...............................................................................................7

              1. DSI's Field Sales Employees Have the Same Job Duties and the
                 Same Job Descriptions Within Job Titles .............................................8

       D. Plaintiffs and the Sales Class are Subject to Uniform and Common
          Compensation Policies.............................................................................9

              1. Base Pay Policy...............................................................................9

              2. Merit Increase Policy .....................................................................10

       E. DSI Pays Women in the Proposed EPA Class Less Than Their Male
          Counterparts for the Same Work ............................................................11

III.   LEGAL ANALYSIS......................................................................................14

       A. To Further the Remedial Purposes of the FLSA, Courts Apply an
          Extremely Lenient Standard at the Notice Stage .................................14

       B. Plaintiffs' Evidence is More Than Sufficient to Meet the Minimal
          Standard for Conditional Certification and Authorize Notice to the
          Proposed Class Members .......................................................................20

              1. Plaintiffs and the Members of the EPA Class Were Victims of a
                 Common Discriminatory Scheme, Effectuated through Common
                 Policies and Implemented By Centralized Decision-makers...............21

              2. Plaintiffs and the Members of the Proposed Collective Share
                 Common Job Titles and Duties..........................................................24

IV.    CONCLUSION................................................................................................25

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

i

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Adams v. Inter-Con Sec. Sys., Inc.*,
    242 F.R.D. 530 (N.D. Cal. 2007) ................................................................................. 15, 16

*Allerton v. Sprint Nextel Corp.*,
    No. 2:09-cv-01325-RLH-GWF, 2009 U.S. Dist. LEXIS 132454 (D. Nev. Nov. 16, 2009) ........ 24

*American Fedn. of State, Cty. & Mun. Emples. v. Cty. of Nassau*,
    609 F. Supp. 695 (E.D.N.Y. 1985) ................................................................................. 23

*Anderson v. State Univ. of New York.*,
    169 F.3d 117 (2d Cir. 1999) ........................................................................................ 14

*Andrako v. United States Steel Corp.*,
    788 F. Supp. 2d 372 (W.D. Pa. 2011) ........................................................................... 16

*Aros v. United Rentals, Inc.*,
    269 F.R.D. 176 (D. Conn. 2010) ............................................................................... 24, 25

*Austin v. Cuna Mut. Ins. Soc'y*,
    232 F.R.D. 601 (W.D. Wis. 2006) ................................................................................. 16

*Ayers v. SGS Control Servs.*,
    No. 03 Civ. 9078, 2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 26, 2007) ............................. 19

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
    772 F.Supp.2d 1111 (N.D. Cal. 2011) ............................................................................ 15

*Benedict v. Hewlett-Packard Co.*,
    No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 18594 (N.D. Cal. Feb. 13, 2014) ...... 18, 24

*Bonilla v. Las Vegas Cigar Co.*,
    61 F. Supp. 2d 1129 (D. Nev. 1999) .............................................................................. 14

*Brasfield v. Allen*,
    257 F.R.D. 641 (W.D. Tenn. 2009) ............................................................................... 20

*Brewer v. Gen. Nutrition Ctrs.*,
    No. 11-CV-03587, 2013 U.S. Dist. LEXIS 2948 (N.D. Cal. Jan. 7, 2013) ........................ 17, 18

*Buenaventura v. Champion Drywall, Inc. of Nev.*,
    No. 2:10–cv–00377–LDG (RJJ), 2012 U.S. Dist. LEXIS 41390 (D. Nev. Mar. 27,
    2012) ..................................................................................................................... 15

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

ii

*Campanelli v. Hershey Co.,*
No. C 08-1862, 2010 U.S. Dist. LEXIS 92364 (N.D. Cal. Aug. 13, 2010) .................................. 25

*Carrillo v. Schneider Logistics, Inc.,*
No. CV 11-8557 CAS (DTBx) 2012 U.S. Dist. LEXIS 26927 (C.D. Cal. Jan. 31, 2012) ................................................................................................................2, 15, 18, 19, 24

*Chapman v. Fred's Stores of Tenn., Inc.,*
No. 2:08-cv-01247-HGD, 2013 U.S. Dist. LEXIS 58069 (N.D. Ala. Mar. 15, 2013) .............................................................................................................22, 23, 24

*Collins v. Dollar Tree Stores, Inc.,*
No. 2:08-v-1267-AKK (N.D. Ala. Dec. 12, 2008) ........................................................ 23

*Colvert v. Dolgencorp, Inc.,*
No. 2:06-CV-465-VEH (N.D. Ala. Nov. 30, 2007) ....................................................... 23

*Crawford v. Lexington-Fayette Urban Country Gov't,*
2008 U.S. Dist. LEXIS 56089 (E.D. Ky. July 22, 2008)................................................. 20

*Culver v. Bell & Loffland, Inc.,*
146 F.2d 29 (9th Cir. 1944) ........................................................................................14

*Daniels v. Aéropostale West, Inc.,*
No. C 12-05755, 2013 U.S. Dist. LEXIS 59514 (N.D. Cal. Apr. 24, 2013) .......................15

*Deane v. Fastenal Co.,*
No. C 11-00042, 2011 U.S. Dist. LEXIS 131178 (N.D. Cal. Nov. 14, 2011) ............................ 21

*Diaz v. S&H Bondi's Dep't Store, Inc.,*
No. 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 17, 2012)............................ 18, 19

*Douglas v. GE Energy Reuter Stokes,*
No. 1:07CV077, 2007 U.S. Dist. LEXIS 32449 (N.D. Ohio Apr. 30, 2007) .......................14

*Ebbert v. Nassau Cty.,*
No. 05-CV-5445 (FB) (AKT), 2007 U.S. Dist. LEXIS 58344 (E.D.N.Y. Aug. 9, 2007)......19, 21

*Edwards v. City of Long Beach,*
467 F.Supp.2d 986 (C.D. Cal. 2006) ...........................................................................18

*Escobar v. Whiteside Constr. Corp.,*
No. C 08-01120, 2008 U.S. Dist. LEXIS 68439 (N.D. Cal. Aug. 21, 2008)......15, 16, 17, 19

*Garner v. G.D. Searle Pharmas. & Co.,*
802 F. Supp. 418 (M.D. Ala. 1991) .............................................................................22

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

iii

*Gee v. Suntrust Mortg., Inc.*,
    No. C 10–1509 RS, 2011 U.S. Dist. LEXIS 21101 (N.D. Cal. Feb.18, 2011) .................... 15

*Gerlach v. Wells Fargo & Co.*,
    No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823 (N.D. Cal. Mar. 28, 2006) ................. 18

*Gilbert v. Citigroup, Inc.*,
    No. 08-0385, 2009 U.S. Dist. LEXIS 18981 (N.D. Cal. Feb. 18, 2009) ....................... 17, 19

*Gomez v. H & R Gunlund Ranches, Inc.*,
    No. CV F 10-1163, 2010 U.S. Dist. LEXIS 137736 (E.D. Cal. Dec. 16, 2010) ........... 16, 23, 24

*Gortat v. Capala Bros.*,
    No. 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010)........................ 16

*Guifu Li v. A Perfect Franchise, Inc.*,
    No. 5:10-CV-01189-LHK, U.S. Dist. LEXIS 114821(N.D. Cal., Oct.5, 2011)................... 15

*Guzelgurgenli v. Prime Time Specials, Inc.*,
    883 F.Supp.2d 340 (E.D.N.Y. 2012) ........................................................................... 20

*Hallissey v. Am. Online, Inc.*,
    2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ............................................... 18

*Harris v. Vector Mktg.Corp.*,
    716 F. Supp. 2d 835 (N.D. Cal. 2010) ...................................................................... 17, 18

*Harris v. Vector Mktg. Corp.*,
    753 F.Supp.2d 996 (N.D.Cal.2010) .......................................................................... 15, 19

*Heagney v. European Am. Bank*,
    122 F.R.D. 125 (E.D.N.Y. 1988) ................................................................................ 18

*Helton v. Factor 5, Inc.*,
    No. C 10-04927 SBA, 2012 U.S. Dist. LEXIS 88440 (N.D. Cal. June 25, 2012) ....................... 19

*Hill v. R+L Carriers, Inc.*,
    690 F. Supp. 2d 1001 (N.D. Cal. 2010) .................................................................. 14, 16, 19

*Hipp v. Liberty Nat'l Life Ins. Co.*,
    252 F. 3d 1208 (11th Cir. 2001)............................................................................... 19

*Hoffman v. Securitas Sec. Servs. USA, Inc.*,
    No. CV-07-502-S-EJL, 2008 U.S. Dist. LEXIS 123883 (D. Idaho Aug. 7, 2008).................... 24

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989) ................................................................................................ 14, 15

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

iv

*Indergit v. Rite Aid Corp.*,
  Nos. 08 Civ. 9361 and 08 Civ. 11364, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010) ............................................................................................................................ 25

*Jarvaise v. Rand Corp.*,
  212 F.R.D. 1 (D.D.C. 2002) ................................................................................................ 22

*Jewell v. Aaron's Inc.*,
  No. 1:12-CV-0563-AT, 2012 U.S. Dist. LEXIS 92285 (N.D. Ga. June 28, 2012) ...................... 19

*Kress v. PricewaterhouseCoopers, LLP*,
  263 F.R.D. 623 (E.D. Cal. 2009) ................................................................... 15, 16, 17, 19

*Labrie v. UPS Supply Chain Solutions, Inc.*,
  No. C 08–3182 PJH, 2009 U.S. Dist. LEXIS 25210 (N.D. Cal., Mar.18, 2009) ............ 15, 17

*Leuthold v. Destination Am.*,
  224 F.R.D. 462 (N.D. Cal. 2004) ........................................................................ 15, 16, 19

*Lewis v. Alert Ambulette Serv. Corp.*,
  No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269 (E.D.N.Y. Jan. 19, 2012) ..................................... 17

*Lewis v. Huntington Nat'l Bank*,
  789 F. Supp. 2d 863 (S.D. Ohio 2011) ............................................................................ 16

*Lewis v. Nev. Prop. 1, LLC*,
  2013 U.S. Dist. LEXIS 8945 (D. Nev. Jan. 22, 2013) ............................................... 17, 18

*Lewis v. Wells Fargo & Co.*,
  669 F. Supp. 2d 1124 (N.D. Cal. 2009) ................................................................... 14, 19

*Lifrak v. N.Y. City Council*,
  389 F. Supp. 2d 500 (S.D.N.Y. 2005) ............................................................................. 14

*Lindberg v. UHS of Lakeside, LLC*,
  761 F. Supp.2d 752 (W.D. Tenn. 2011) ........................................................................... 18

*Luque v. AT&T Corp.*,
  No. 09-05885 CRB, 2010 U.S. Dist. LEXIS 126545 (N.D. Cal. Nov. 19, 2010) ....... 15, 16, 17, 18

*Mazur v. Olek Lejbzon & Co.*,
  No. 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321(S.D.N.Y. Nov. 30, 2005) ..... 23

*Miller v. Jackson, Tennessee Hosp. Co., LLC*,
  No. 3:10-1078, 2011 U.S. Dist. LEXIS 29011(M.D. Tenn. Mar. 21, 2011) ................................. 19

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

v

*Moore v. Publicis Groupe SA*,
   No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675 (S.D.N.Y. June 28, 2012) ............ 18, 21, 23, 24

*Morgan v. Family Dollar Stores, Inc.*,
   551 F.3d 1233 (11th Cir. 2008) ........................................................................................... 17

*Mowdy v. Beneto Bulk Trans.*,
   No. C 06-05682, 2008 U.S. Dist. LEXIS 26233 (N.D. Cal. Mar. 31, 2008) ....................... 17

*Mullhall v. Advance Sec., Inc.*,
   19 F.3d 586 (11th Cir. 1994) ............................................................................................... 23

*Murillo v. Pacific Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) ......................................................................................... 15

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ................................................................................................ 19

*Newton v. Schwarzenegger*,
   No. C 09-5887 VRW, 2010 U.S. Dist. LEXIS 64008 (N.D. Cal. June 7, 2010) ................. 19

*Northwest Airlines, Inc. v. Transp. Workers Union*,
   451 U.S. 77 (1981) .............................................................................................................. 14

*O'Brien v. Ed Donnelly Enters.*,
   575 F.3d 567 (6th Cir. 2009) ............................................................................................... 19

*Partlow v. Jewish Orphans Home of S. Calif., Inc.*,
   645 F.2d 757 (9th Cir. 1981) ............................................................................................... 14

*Pippins v. KPMG, Inc.*,
   No. 11 Civ. 0377 (CM) (JLC),  2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ................. 19

*Ramirez v. Ghilotti Bros., Inc.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) .......................................................................... 15, 16

*Ravenell v. Avis Budget Car Rental, LLC*,
   No. 08-CV-2113, 2010 U.S. Dist. LEXIS 72563 ................................................................. 25

*Rehwaldt v. Electronic Data Sys. Corp.*,
   No. 95-876, 1996 U.S. Dist. LEXIS 22125 (W.D.N.Y. Mar. 28, 1996) ........................... 21, 22

*Rochlin v. Cincinnati Ins. Co.*,
   No. IP 00-1898-C, 2003 U.S. Dist. LEXIS 13759 (S.D. Ind. July 8, 2003) ........................ 22

*Russell v. Wells Fargo & Co., Inc.*,
   No. C 07-3993 CW, 2008 U.S. Dist. LEXIS 78771 (N.D. Cal. Sept. 3, 2008) .......... 1, 16, 17, 18

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

vi

*Sabol v. Apollo Group, Inc.*,
No. 09-CV-3439, 2010 U.S. Dist. LEXIS 47145 (E.D. Pa. May 12, 2010) .................................. 15

*Sanchez v. Sephora USA, Inc.*,
No. 11-03396 SBA, 2012 U.S. Dist. LEXIS 99924 (N.D. Cal. July 17, 2012)............ *passim*

*Santiago v. Amdocs, Inc.*,
No. C 10–4317 SI, 2011 U.S. Dist. LEXIS 146126 (N.D. Cal., Dec.19, 2011).....................15

*Smith v. C.H. James Rest. Holdings, L.L.C.*,
No. 11 C 5545, 2012 U.S. Dist. LEXIS 48065 (N.D. Ill. Apr. 5, 2012)........................................ 20

*Stanfield v. First NLC Fin. Services, LLC*,
No. C06-3892 SBA, 2006 U.S. Dist. LEXIS 98267 (N.D. Cal. Nov. 1, 2006)..............16, 17

*Stiller v. Costco*,
No. 09-CV-2473-H (BLM) 2010 U.S. Dist. LEXIS 140297 (S.D. Cal. Dec. 13,
2010) .................................................................................................................................15, 16

*Titchenell v. Apria Healthcare, Inc.*,
No. 11-563, 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011)........................................... 19

*Villa v. United Site Servs. of Cal., Inc.*,
No. 5:12-CV-00318-LHK, 2012 U.S. Dist. LEXIS 162922 (N.D. Cal. Nov. 13,
2012) ................................................................................................................................. 17, 18

*Wertheim v. Arizona*,
No. CIV 92-453 PHX RCB, 1993 U.S. Dist. LEXIS 21292 (D. Ariz. Sept. 28, 1993)........14

*Williams v. U.S. Bank N.A.*,
290 F.R.D. 600 (E.D. Cal. 2013) .........................................................................................15

*Wong v. HSBC Mortg. Corp.*,
No. C 07–2446 MMC, 2008 U.S. Dist. LEXIS 21729 (N.D. Cal. Mar. 19, 2008) ........15, 18

*Woods v. RHA/Tennessee Group Homes, Inc.*,
803 F. Supp. 2d 789 (M.D. Tenn. 2011) ........................................................................... 17

*Young v. Cooper Cameron Corp.*,
229 F.R.D. 50 (S.D.N.Y. 2005).....................................................................................18, 20

**Federal Statutes**

Fed. R. Civ. P. 23......................................................................................................................14, 19

29 U.S.C. § 206(d).......................................................................................................................1, 14

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

vii

29 U.S.C. § 206(d)(1)..................................................................................................... 23

29 U.S.C. § 216(b)......................................................................................................*passim*

29 U.S.C. § 256.............................................................................................................. 14

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

viii

## I.    INTRODUCTION

Named Plaintiffs Sara Wellens, Kelly Jensen, Jacqueline Pena, Bernice Giovanni, Lara Hollinger and Jennifer Bennie are current and former sales employees of Defendant Daiichi Sankyo, Inc. ("DSI," the "Company," or "Defendant"). DSI paid them and other female Sales Representatives and District Managers (together "Sales Class" or "EPA Class") less than their male peers for performing the same job duties, in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). This common discriminatory scheme was effectuated through uniform corporate policies that empower a centralized and small, predominantly male group of sales leaders to make final pay decisions.

With this motion, Plaintiffs seek relief that is at once basic and critically important. Under the EPA, which is part of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), employees must affirmatively "opt-in" to the action in order to stop the running of their statutes of limitations and become part of the suit. Plaintiffs ask the Court to authorize the mailing of notice of this gender discrimination litigation to members of the proposed collective action so that they can decide whether to opt in to the lawsuit and thereby preserve their claims. Given the limited purposes and effects of such a motion, the standard applied during this stage of conditional certification is extremely lenient, and Plaintiffs' burden minimal. *See Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 U.S. Dist. LEXIS 99924, at *6 (N.D. Cal. July 17, 2012); *Russell v. Wells Fargo & Co., Inc.*, No. C 07-3993 CW, 2008 U.S. Dist. LEXIS 78771, at *6 (N.D. Cal. Sept. 3, 2008). When faced with such a motion, courts typically grant conditional certification of the collective action and authorization of notice – *even upon the pleadings or declarations alone. Id.*

Plaintiffs easily meet their low burden. In addition to common compensation policies, uniform job descriptions, and other Company documents, Plaintiffs' motion is supported with deposition testimony from six Named Plaintiffs, as well as declarations from a geographically-diverse group of 31 Named Plaintiffs and Opt-in Claimants.[1] Plaintiffs' preliminary evidence shows that the proposed

---

[1] *See generally* Named Plaintiff and Opt-in Claimants' Declarations ("Claimants' Declarations") (Exs. 1-31) and Named Plaintiffs' Deposition Transcripts (Exs. 32-37). All exhibits hereinafter refer to the documents attached to the Declaration of Felicia M. Medina In Support of Plaintiffs' Motion for EPA Conditional Collective Action Certification ("Medina Declaration" or "Medina Decl."), dated March 6, 2014.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

1

class was subject to common policies and practices resulting in widespread gender-based pay disparities between employees in similar positions. Plaintiffs have more than demonstrated "that there are potentially similarly-situated employees who would benefit from receiving notice," *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS (DTBx), 2012 U.S. Dist. LEXIS 26927, at *45 (C.D. Cal. Jan. 31, 2012) the most relevant inquiry at this stage.

Although courts in the Ninth Circuit do not require Plaintiffs to demonstrate that class members are interested in joining the litigation, the substantial number of women who have opted-in and filed declarations to date strongly suggests the existence of other similarly-situated class members who would benefit from receiving notice of the litigation. Accordingly, the Court should conditionally certify the EPA Class and authorize the mailing of notice to prospective class members.

## II.   FACTUAL BACKGROUND

### A.   Defendant DSI and its Predominantly Male Sales Leadership Team.

DSI is a global pharmaceutical giant that manufactures and sells hypertension, diabetes, acute coronary syndrome, and melanoma pharmaceuticals and therapies throughout the United States. *See* DSI Key Facts (Ex. 38). The Company employs approximately 1,500 to 2,000 sales employees in its Sales Division ("Division") to promote and sell its pharmaceutical products.[2]

In ascending order, the Division is comprised of (1) Sales Representatives; (2) District Managers; (3) Regional Directors; (4) Area Business Directors; (5) a Vice President of Sales; and (6) a President of Commercial Operations ("President"). *See* Organizational Charts (Exs. 44-45). From the time DSI was formed, the Division's highest ranking positions – Vice President of Sales and President – have exclusively been held by men. *Id*. Specifically, from 2006 to 2013, John Gargiulo ("President Gargiulo"), served as President.[3] In 2013, the Company promoted another male sales executive – Greg Barrett – to replace President Gargiulo

---

[2] *Id.*; *see also*, *e.g.*, Online Job Postings (Exs. 39-42); EEO-1 Reports (Ex. 43) at DSI_WELLENS00021942.

[3] *See*, *e.g.*, 2010-2013 Organizational Charts (Ex. 44) at DSI_WELLENS00010905, DSI_WELLENS 00010966, DSI_WELLENS 00011031; 2008-2009 Organizational Charts (Ex. 45) at DSI_WELLENS 00013654, DSI_WELLENS 00013695; *see also* Medina Decl. at ¶ 6. In 2013, former President Gargiulo separated from the Company for undisclosed reasons. *See* DSI Press Release Regarding Executive Appointments (Ex. 46).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

2

1    as Division President.  *See* Press Release Regarding Executive Appointments (Ex. 46); *see also*

2    DSI Leadership (Ex. 47).  Similarly, Vice President of Sales William "Bill" McLean ("VP

3    McLean") has been the Vice President of Sales since the Company was formed in 2006.[4]

4          The functional differences between employees in the Division are apparent through their

5    respective roles.  At the lower levels, Sales Representatives and District Managers work "in the

6    field,"[5] as opposed to in corporate offices.  The Sales Representatives and District Managers sell

7    and market DSI products to health care providers.  *See* Claimants' Declarations (Exs. 1-31) at ¶¶

8    5-6, 9; Online Job Postings (Exs. 39-42); Job Descriptions (Exs. 48-53).  At the upper levels, a

9    small group of Regional Directors, Area Business Directors, VP McLean, and President

10   (collectively "the predominantly male sales leadership team"), with some involvement by

11   Human Resources ("HR"), manage the entire field sales force by creating and implementing all

12   personnel-related policies and procedures, including making compensation and other

13   employment decisions.  *See*, *e.g.*, Base Pay Administration Policy (Ex. 54) at

14   DSI_WELLENS00004034; Merit Increase Policy (Ex. 55) at DSI_WELLENS00004069;

15   Regional Director Job Descriptions (Exs. 57-58); Area Business Director Job Description (Ex.

16   59); Claimants' Declarations (Exs. 1-31) at ¶¶ 10-11.  This predominantly male sales leadership

17   team also monitors all Sales Representatives' and District Managers' field sales activities

18   through the Company's highly regimented tracking systems.  *See* Claimants' Declarations (Exs.

19   1-31) at ¶ 9.

20         Women are increasingly rare as one climbs  DSI's corporate ladder.  *See* Organizational

21   Charts (Exs. 44-45); EEO-1 Reports (Ex. 43).  At the lower levels, they represent more than half

22   of all Sales Representatives, yet less than one-third of District Managers.  *See* Medina Decl. at ¶

23   8-9.   Upper-level management positions are reserved almost exclusively for men.   *See*

24   Organizational Charts (Exs. 44-45); EEO-1 Reports (Ex. 43).  For example, in 2012, women

25   occupied 56% of Sales Representative positions nationwide, but only 32% of District Manager

---

[4]  *See*, *e.g.*, 2010-2013 Organizational Charts (Ex. 44) at DSI_WELLENS00010905,
DSI_WELLENS 00010966 and 00011031; *see also* 2008-2009 Organizational Charts (Ex. 45) at
DSI_WELLENS 00013654 and 00013695.
[5]  *See* Claimants' Declarations (Exs. 1-31).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

3

1   positions. *See* Medina Decl. at ¶ 8-9. Women held less than 17% of the positions at or above the

2   Regional Director level in that year. *See* 2010-2013 Organizational Charts (Ex. 44).

3   **Figure 1. DSI Sales Division Gender Breakdown, Years 2008-2013.[6]**



14   The Company's mandatory annual Employer Information Report EEO-1 ("EEO-1

15   Reports") – a reporting requirement that summarizes workforce demographics – confirms that

16   women are not represented at DSI's highest levels. *See* EEO-1 Reports (Ex. 43); *see also* Figure 2

17   below. In 2011, Danesha Smith was hired as the Vice President of Human Resources ("VP HR

18   Smith").[7] This was the first time in the Company's history that a woman was hired to serve in an

19   executive role.[8] Of the seven individuals in the Division to have ever held the Area Business

---

[6] ████████████████████████████████████████████ Percentages regarding Regional
Directors and above are derived from Defendant's organizational charts. *See* Organizational
Charts (Exs. 44-45). The percentages shown reflect the average gender composition of the
identified positions from 2008 to 2013.

[7] *See* DSI Press Release Regarding Danesha Smith Hire (Ex.60). Plaintiffs submit that VP HR
Smith is the sole female "Executive/Sr. Official & Mngr." represented in Figure 2.

[8] *See* 2010-2013 Organizational Charts (Ex. 44) at DSI_WELLENS00010907,
DSI_WELLENS00010922, DSI_WELLENS00010968, DSI_WELLENS00010983,
DSI_WELLENS00011032; *see also* 2008-2009 Organizational Charts (Ex. 45) at
DSI_WELLENS00013656, DSI_WELLENS00013671.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

4

Director job title between 2008 and 2013, *only one* has been female.[9]  This lone female, Lerryn Trzcinski, was promoted to Area Business Director only *after* DSI was put on notice about the instant matter.  *See* Dkt. No. 38-1, ¶12; *see also* Medina Decl. ¶ 5.

**Figure 2.  DSI's 2012 EEO-1 Report: 12 Men and *One* Woman at its Highest Levels.[10]**



**B.      DSI's Male Sales Leadership Team Perpetuates a Culture of Discrimination.**

DSI's predominantly male sales leadership team – led by VP McLean – promotes a culture wherein female sales employees are marginalized, sexualized, and undervalued.[11]  This is especially true for women who become pregnant, take maternity leave, or avail themselves of the Company's flexible work schedule policy.[12]  DSI's work environment is permeated with discrimination, and its strong anti-female biases result in discriminatory compensation

---

[9] *See* 2010-2013 Organizational Charts (Ex. 44) at DSI_WELLENS00010905, DSI_WELLENS 00010966, DSI_WELLENS 00011031; *see also* 2008-2009 Organizational Charts (Ex. 45) at DSI_WELLENS 00013654, DSI_WELLENS 00013695.

[10] *See* EEO-1 Reports (Ex. 43) at DSI_WELLENS00021939.  DSI's EEO-1 reports from other years reveal similarly striking gender disparities at the highest levels of the Company.  *See* EEO-1 Reports (Ex. 43).

[11] *See, e.g.*, Sara Wellens Deposition Transcript ("Wellens Dep. Tr.) (Ex. 37) at 42:19-43:18, 47:3-24, 239:12-23, 295:14-296:8; Jacqueline Pena Deposition Transcript ("Pena Dep Tr.") (Ex. 36) at 276:2-20, 323:2-324:3; Lara Hollinger Deposition Transcript ("Hollinger Dep. Tr.") (Ex. 34) at 126:7-128:2, 132:24-133:17; Bernice Giovanni Deposition Transcript ("Giovanni Dep. Tr.") (Ex. 33) at 177:22-178:19; Jennifer Bennie Deposition Transcript (Bennie Dep. Tr.") (Ex. 32) at 117:8-17.

[12] *See, e.g.*, Wellens Dep. Tr. (Ex. 37) at 92:19-93:8; Pena Dep. Tr. (Ex. 36) at 126:22-128:17,189:6-190:8; Kelly Jensen Deposition Transcript ("Jensen Dep. Tr.") (Ex. 35) at 165:8-17; Giovanni Dep. Tr. (Ex. 33) at 106:1-107:14.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

5

practices.[13]

The predominantly male sales leadership team pays male sales employees more than female sales employees for performing similar job duties (*see* discussion *infra* Part II.E.) and affords men more favorable employment opportunities.[14]  For example, male sales employees, without limitation: (1) receive favorable career progression opportunities and promotions; (2) are assigned more profitable territories; (3) receive more favorable drug portfolios; and (4) receive larger sales contest awards than female sales employees. *Id.*

The predominantly male sales leadership team and other members of the Company's "boys' club" also bestow other career-advancing opportunities on male sales employees while denying female sales employees similar professional networking opportunities.[15]  Such opportunities include, without limitation, invitations to informal and Company-sponsored social events. *Id.*

It is not uncommon for male sales leaders to subject female sales employees to ongoing sexual harassment.[16]  Women are openly castigated women for becoming pregnant, taking maternity leave, seeking part-time work schedules, or, as one Regional Director put it, committing "career suicide."[17]  The male sales leadership team has even suggested that women

[13] *See, e.g.,* Hollinger Dep. Tr. (Ex.34) at 114:1-115:17; Jensen Dep. Tr. (Ex. 35) at 211:9-13; Giovanni Dep. Tr. (Ex. 33) at 164:7-165:8; Pena Dep. Tr. 135:5-22, 147:7:148-13.

[14] *See, e.g.,* Wellens Dep. Tr. (Ex. 37) at 42:19-43:25, 57:3-58:25, 234:12-235:14; Pena Dep. Tr. (Ex. 36) at 135:5-22, 147:7-148:13; Hollinger Dep. Tr. (Ex. 34) at 101:18-102:21, 103:22-104:25, 114:1-115:9, 224:23-225:6, 245:9-246:10; Jensen Dep. Tr. (Ex. 35) at 137:4-138:13, 138:19-139:20, 140:14-141:2, 143:13-144:12, 181:8-185:24; Giovanni Dep. Tr. (Ex. 33) at 48:24-49:1, 164:4-6, 190:1-191:2, 200:24-201:10, 229:23-230:8; Bennie Dep. Tr. (Ex. 32) at 59:3-60:16, 222:6-11, 224:1-225:25, 230:5-16, 255:2-7, 262:7-263:22.

[15] *See, e.g.,* Wellens Dep. Tr. (Ex. 37) at 57:13-18, 295:14-296:8; Pena Dep. Tr. (Ex. 36) at 153:6-155:25, 319:7-320:11; Hollinger Dep. Tr. (Ex. 34) at 114:1-115:9; Jensen Dep. Tr. (Ex. 35) at 54:19-57:2, 207:21-209:23, 214:15-215:4; Giovanni Dep. Tr. (Ex. 33) at 99:18-25, 165:4-8, 175:10-176:24, 220:17-22, 223:18-25; Bennie Dep. Tr. (Ex. 32) at 211:18-212:1, 248:7-23, 252:21-253:1, 253:11-19.

[16] *See e.g.,* Pena Dep. Tr. (Ex. 36) at 292:16-293:19, 321:8-323:13; Hollinger Dep. Tr. (Ex. 34) at 126:7-128:2,; Bennie Dep. Tr. (Ex. 32) at 250:21-251:5.

[17] *See supra* n. 12; *see also, e.g.,*Wellens Dep. Tr. (Ex. 37) at 92:19-93:16; Pena Dep. Tr. (Ex. 36) at 197:18-198:20, 286:25-288:9, 293:12-15, 323:7-13; Hollinger Dep. Tr. (Ex. 34) at 256:25-258:8; Giovanni Dep. Tr. (Ex. 33) at 104:6-9, 177:24-178:10; Bennie Dep. Tr. (Ex. 32) at 252:1-13; Joyce Bagley Email to HR. (Ex. 56).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

6

should oblige the sexual demands of their male colleagues to ensure successful careers at DSI. *See*, *e.g.*, Hollinger Dep. Tr. (Ex. 34) at 126:7-128:2.

The male sales leadership team's actions and the Company's overall misogynistic corporate culture have been condoned and further perpetuated by the Company's ineffective HR functions and leaders.[18] For example, HR has failed to adequately investigate discrimination and sexual harassment complaints, and recklessly administered its leave policies and benefits, which disproportionately affect female sales employees. *Id.*

In all, unlawful stereotypes and perceived less worth equals less pay and unequal employment opportunities for women at DSI.

**C.      The EPA Collective is Comprised of Sales Representatives and District Managers.**

Plaintiffs seek EPA conditional certification of all:

"[C]urrent, former, and future female sales employees in a sales representative and first level district manager role, including, without limitation, Sales Representative; Sales Representative I-V; Sales Specialist; Senior Sales Specialist; Senior Sales Professional; Cardiovascular ("CV") Specialty Sales Representative; CV Specialty Sales Representative I-III; Senior CV Specialty Sales Representative; Senior CV Specialty Sales Professional; Hospital Representative; Hospital Representative I-3; Senior Hospital Sales Representative; Hospital Sales Specialist;  and Primary Care, CV and Hospital District Manager, who worked at any time in Defendant's sales organization in the United States during the applicable liability period."

*See* Compl. Dkt. No. 1, ¶ 116.

All Sales Representatives and District Managers promote DSI products to healthcare providers in one of the Company's three field sales markets: Primary Care ("PC"), Cardiovascular Specialty ("CV") or Hospital. *See* Organizational Charts (Exs. 44-45). PC sales employees market the Company's pharmaceuticals to primary care physicians; CV sales employees sell DSI products to cardiovascular specialists; and Hospital sales employees promote

---

[18] *See*, *e.g.*, Wellens Dep. Tr. (Ex. 37) at 103:3-105:10, 106:3-23; Pena Dep. Tr. (Ex. 36) at 126:22-25; 127:1-128:25, 129:1-18, 136:8-137:22, 147:7-148:18, 278:19-280:13; Hollinger Dep. Tr. (Ex. 34) at 32:9-33:23, 65:16 -68:7, 145:6-147:8; Giovanni Dep. Tr. (Ex. 33) at 107:22-110:24, 133:21-138:16; Bennie Dep. Tr. (Ex. 32) at 119:9-24, 179:1-180:20, 256:20- 258:2; Jensen Dep. Tr. (Ex. 35) at 86:17-87:15.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

7

1    Company products in hospital facilities. *See* Named Plaintiff and Opt-in Claimants'

2    Declarations (Exs. 1-31); Job Descriptions (Exs. 48-53).

3           Within the job titles at issue (*i.e.*, PC Sales Representative, CV Specialty Sales

4    Representative, Hospital Sales Representative, PC District Manager, CV District Manager,

5    Hospital District Manager) are tiering levels (*e.g.*, Sales Representative I-II; Senior Sales

6    Specialist; Senior Sales Professional). *See* Job Descriptions (Exs. 48-53). A change in tier does

7    not change the job duties of a field sales employee. *Id; see also* Claimants' Declarations (Exs. 1-

8    31). The Company uses the same job description for all tiers within a job title. *See* Job

9    Descriptions (Exs. 48-53); *see also* discussion *infra* Part II.C.1.

10                 **Figure 3. All Tiers Within Job Titles Have the Same Job Description.**[19]



11

12

13

14

15

16

17

18

19

20

21

22                        **1.    DSI's Field Sales Employees Have the Same Job Duties and the**
                                  **Same Job Descriptions Within Job Titles.**
23

24           The job duties performed by all field sales employees in a given job title, irrespective of tier or

25    geographic location, are substantially similar. *See* Claimants' Declarations (Exs. 1-31) at ¶¶ 7-8.

26    DSI sales employees within the same job title perform equivalent duties. *Id*; Job Descriptions (Exs.

27    48-53). Opt-in Claimants' testimony and the Company's own job descriptions confirm this fact. *See*

28    [19] *See Id.*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

8

Claimants' Declarations (Exs. 1-31) ¶¶ at 5, 7-8; Job Descriptions (Exs. 48-53).  Not only do the same job duties apply within each job title, there is material overlap in duties across the PC, CV, and Hospital field sales markets.  *See* Claimants' Declarations (Exs. 1-31); Job Descriptions (Exs. 48-53).  Pursuant to DSI policy, all Sales Representatives across the three markets are charged with (i) building and developing relationships with key healthcare providers; (ii) serving as "disease state expert"; and (iii) implementing promotional strategies to increase selling opportunities.  *See* Sales Representative Job Descriptions (Exs. 48-49, 53).  Similarly, all PC, CV, and Hospital District Managers (i) execute Company-approved sales strategies and (ii) submit reports as directed by the predominantly male sales leadership team.  *See* District Manager Job Descriptions (Exs. 50-52).

### D. Plaintiffs and the Sales Class are Subject to Uniform and Common Compensation Policies.

DSI's compensation policies and procedures apply in the same manner to all members of the EPA collective, regardless of, *inter alia*, job title, tier, geographical location.  *See* Base Pay Administration Policy (Ex. 54) at DSI_WELLENS00004028; Merit Increase Policy (Ex. 55) at DSI_WELLENS00004063.  Such policies and procedures govern all aspects of Plaintiffs' and the proposed collective's pay and set forth the approval procedures for all compensation-related actions. *See* Base Pay Administration Policy (Ex. 54); Merit Increase Policy (Ex. 55); Claimants' Declarations (Exs. 1-31) at ¶¶ 10-11.

### 1. Base Pay Policy.

DSI has established uniform practices for setting the base pay of all Sales Representatives and District Managers.  *See* Base Pay Administration Policy (Ex. 54); Claimants' Declarations (Exs. 1-31) at ¶¶ 10-11.  Specifically, Regional Directors "always recommend[] [the base] salary, hiring/termination of subordinates."  *See* Regional Director Job Descriptions (Exs. 57-58).  Together with select members of HR, Regional Directors approve the base salaries of Sales Representatives and recommend for approval (by higher ranking members of the predominately male leadership team) the

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

9

base salaries of District Managers.[20]   Per the Company's job descriptions and Plaintiffs' testimony, District Managers do not have the authority to make final pay decisions.[21]

The Company also utilizes uniform policies – *e.g.*, its Base Pay Administration Policy – to govern the administration of all other compensation actions.  *See* Base Pay Administration Policy (Ex. 54).  The Company defines compensation actions as merit increases, promotional increases, equity adjustments, developmental increases, and lump sum payments.  *Id.* at DSI_WELLENS00004031-4032.  In the Division, all compensation actions for "positions below Regional Director" – here, the EPA collective – require approval by "[an] Executive Committee Member, HR Manager and [the] VP [of] HR."  *Id.* at DSI_WELLENS00004034.  Thus, an inner circle of upper-level management has final authority over compensation decisions for all members of the proposed class.

### 2.   Merit Increase Policy.

Like the Base Pay Policy, DSI's Merit Increase Policy applies to all members of the proposed EPA collective action and sets forth a centralized approval process for merit increases.  *See* Merit Increase Policy (Ex. 55).  Regional Directors are responsible for reviewing and approving "dollar merit amount[s] for [sales employees] within the [m]erit [i]ncrease [r]ange applicable to the employee."  *Id.* at DSI_WELLENS00004069; *see also, e.g.*, Hollinger Dep. Tr. (Ex.34) at 47:4-23.  Regional Directors' determinations are then sent to the "Division Presidents"[22] for final review and approval.  *Id.*  In the Division, VP McLean is responsible for approving all compensation actions for employees.[23]  Together, the President and VP McLean have ultimate decision-making

---

[20] *Id*; *see also, e.g.*,Wellens Dep. Tr. (Ex. 37) at 28:12-25, 74:17-24; Pena Dep. Tr. (Ex. 36) at 42:2-18; Jensen Dep. Tr. (Ex. 35) at 21:19-22:4; Hollinger Dep. Tr. (Ex. 34) at 45:16-47:23; Giovanni Dep. Tr. (Ex. 33) at 165:9-18.

[21] *See* District Manager Job Descriptions (Ex. 50-52); *see also, e.g.*, Hollinger Dep. Tr. (Ex. 34) at 45:16-47:23; Giovanni Dep. Tr. (Ex. 33) at 34:2-35:7; 165:9-21

[22] Upon information and belief, Division Presidents are also called "compensation approvers." *See* Annual Compensation Planning and LTI Choice Enrollment Presentation (Ex. 61) at DSI_WELLENS00008077.

[23] In or around 2013, the Division Presidents became collectively known as the "Management Committee."  *See* FY2012 Annual Compensation Planning (Ex. 62); HR Email to Management Committee (Ex. 63).  During this time, the Management Committee included former President Gargiulo; VP McLean; VP Smith; William Ippolito, Vice President, Chief Information Officer; Jay Feingold, Vice President, Medical Affairs; Craig Bleifer, Vice President, General Counsel; Mark Dennish, Vice President of Business Development; Greg Barrett, Vice President of Marketing and

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

10

1  authority over the compensation of all employees in the proposed Sales Class.[24]

2

### E.   DSI Pays Women in the EPA Class Less Than Their Male Counterparts for the Same Work.

3

4  DSI paid the Named Plaintiffs, Opt-in Claimants and the proposed EPA collective less

5  than their male counterparts, despite performing substantially similar job duties.  *See* Claimants'

6  Declarations (Exs. 1-31) at ¶¶12-14; *see also* Figure 4.

7  //

8  //

9  //

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22

23

24  Managed Markets (now acting President); Jeff Lane, Vice President of Operations; and Matthew
   Allegrucci, Associate General Counsel. *Id.*

25  [24] *See* 2011 Compensation Planning DSAC – Sales (HO & Field) Presentation (Ex. 64) at
   DSI_WELLENS00008317 ("Presidents [a]pprove all [c]ompensation [r]ecommendations");

26  Compensation Measurement Strategy (Ex. 65) at DSI_WELLENS00008502 (noting that
   Division Presidents meet with HR prior to final submission, and then forward compensation

27  decisions to [] President for review and approval); Reward Excellence Presentation (Ex. 66) at
   DSI_WELLENS00008578 (noting President conducts final review of all compensation actions).

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

11

**Figure 4.  Pay Disparities Between Claimants and Similarly Situated Male Employees[25]**



[25] Salaries reflected in Figure 4 are derived from Defendant's SAP data.  The charts show pay disparities between Claimants and the similarly situated males identified in Claimants' respective declarations.  Defendant did not provide names of any employees in the SAP data other than Named Plaintiffs and Opt-in Claimants (as of October 18, 2013), Plaintiffs believe that the salary figures portrayed in Figure 4 correspond to the Claimants and the identified similarly situated males.  *See* Medina Decl. at ¶ 10; Claimants' Declarations (Exs. 1-31).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

12

Plaintiffs have submitted deposition testimony from six Named Plaintiffs, and declarations from 31 Named and Opt-in Claimants across 16 states attesting that they have the same job duties, are subjected to common policies and were paid less than men for performing the same job duties. *See* Claimants' Declarations (Exs. 1-31). All of these women have also filed consent to join forms.

**Figure 5. Women Nationwide Are Asserting Unequal Pay at DSI.[26]**



//
//
//
//
//
//
//
//
//
//

---

[26] States in which Named Plaintiffs and Opt-in Claimants reside are highlighted. *See* Claimants' Declarations (Exs. 1-31).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

13

1

## III.   LEGAL ANALYSIS

2

### A.   To Further the Remedial Purposes of the FLSA, Courts Apply an Extremely Lenient Standard at the Notice Stage.

3

4   The Equal Pay Act, 29 U.S.C. § 206(d), was adopted as an amendment to the FLSA and

5   incorporates its enforcement mechanisms and collective action provisions.[27] Hence, a suit brought on

6   behalf of "similarly situated" employees under the EPA is not subject to the class action provisions of

7   Federal Rule of Civil Procedure 23 but, instead, to the collective action provisions of 29 U.S.C. §

8   216(b). *See Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) ("collective

9   actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of

10  Civil Procedure for certification of a class action").  Section 216(b) provides that:

11          an action . . . may be maintained against any employer . . . in any Federal or State court
            . . . by any one or more employees for and in behalf of himself or themselves and other
12          employees similarly situated.  No employee shall be a party plaintiff to any such action
            unless he gives his consent in writing to become a party and such consent is filed in the
13          court in which such action is brought.

14  In § 216(b), "Congress has stated its policy that . . . plaintiffs should have the opportunity to proceed

15  collectively" because a collective action serves the twin goals of judicial economy and lowering

16  "individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche, Inc. v. Sperling*,

17  493 U.S. 165, 170 (1989).   As courts widely acknowledge, collective actions further the broad,

18  remedial purposes of the FLSA and promote efficient adjudication.[28]  Unlike in Rule 23 class actions,

19  similarly situated employees are not automatically included in EPA collective actions, and, absent

20  court-ordered tolling, the statutes of limitations on their claims continue to run until the employees

21  affirmatively file written consents to join the litigation.  *See*, *e.g.*, 29 U.S.C. §§ 216(b), 256; *Partlow v.*

22

23  [27] *See*, *e.g.*, *Northwest Airlines, Inc. v. Transp. Workers Union*, 451 U.S. 77, 80 n. 1 (1981); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1133 n. 2 (D. Nev. 1999); *Anderson v. State Univ. of New York.*, 169 F.3d 117, 119 (2d Cir. 1999), *vacated on other grounds*; *Douglas v. GE Energy Reuter Stokes*, No. 1:07CV077, 2007 U.S. Dist. LEXIS 32449, at *6 n. 2 (N.D. Ohio Apr. 30, 2007); *Lifrak v. N.Y. City Council*, 389 F. Supp. 2d 500, 503-504 (S.D.N.Y. 2005).

24

25  [28] *See*, *e.g.*, *Culver v. Bell & Loffland, Inc.*, 146 F.2d 29, 31 (9th Cir. 1944) (provisions of §216(b) liberally construed to avoid multiplicity of suits on common issues); *Hill*, 690 F. Supp. 2d at 1009 (recognizing that § 216 "promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA"); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009); *Wertheim v. Arizona*, No. CIV 92-453 PHX RCB, 1993 U.S. Dist. LEXIS 21292, at *3 (D. Ariz. Sept. 28, 1993).

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

14

*Jewish Orphans Home of S. Calif., Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-LaRoche*, 493 U.S. 165 (1989).

Given the unique features of a collective action, courts in this Circuit have adopted a two-stage certification procedure.[29]   At the first, or "notice," stage, the issue is whether the proposed class members should receive notice of the opportunity to opt in to the action.   *E.g. Ramirez v. Ghilotti Bros.*, *Inc*., 941 F. Supp. 2d 1197, 1203 (N.D. Cal. 2013); *Sanchez*, 2012 U.S. Dist. LEXIS 99924, at *6-7; *Buenaventura v. Champion Drywall*, *Inc.*, No. 2:10-cv-00377-LDG (RJJ), 2012 U.S. Dist. LEXIS 41390, at *32 (D. Nev. Mar. 27, 2012).[30]   As the Supreme Court has stated, effectuation of the opt-in provisions of § 216(b) and the salutary purposes of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."   *Hoffmann-La Roche*, 493 U.S. at 170.[31]

---

[29] *See*, *e.g.*, *Daniels v. Aéropostale West, Inc*., No. C 12-05755, 2013 U.S. Dist. LEXIS 59514, at *5-6 (N.D. Cal. Apr. 24, 2013) (Alsup, J.); *Ramirez*, 941 F. Supp. 2d at 1203 (Breyer, J.); *Williams v. U.S. Bank N.A*., 290 F.R.D. 600 (E.D. Cal. 2013) (Karlton, J.); *Guifu Li v. A Perfect Day Franchise*, *Inc*., Case No.: 5:10-CV-01189-LHK, 2011 U.S. Dist. LEXIS 114821, at *11 (N.D. Cal. Oct. 5, 2011) (Koh, J.); *Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2011 U.S. Dist. LEXIS 146126, at *16 (N.D. Cal. Dec. 19, 2011) (Illston, J.); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F.Supp.2d 1111, 1117 (N.D. Cal. 2011) (Conti, J.); *Gee v. SunTrust Mortg*., *Inc.*, No. C 10–1509 RS, 2011 U.S. Dist. LEXIS 21101, at *5 (N.D. Cal. Feb. 18, 2011) (Seeborg, J.); *Harris v. Vector Mktg. Corp.,* 753 F.Supp.2d 996, 1003 (N.D. Cal. 2010) (Chen, J.); *Wong v. HSBC Mortg. Corp.* (*USA*), No. C 07–2446 MMC, 2008 U.S. Dist. LEXIS 21729, at *5 (N.D. Cal. Mar. 19, 2008) (Chesney, J.); *Lewis*, 669 F.Supp.2d at 1127; *Labrie v. UPS Supply Chain Solutions*, *Inc.*, No. C 08–3182 PJH, 2009 U.S. Dist. LEXIS 25210, at *9-10 (N.D. Cal. Mar. 18, 2009) (Hamilton, J.); *Escobar v. Whiteside Construction Corp*., 2008 U.S. Dist. LEXIS 68439, at *9-10 (N.D. Cal. Aug. 21, 2008) (Alsup, J.); *Adams v. Inter-Con Sec. Sys.*, *Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007); *Leuthold v. Destination Am.*, *Inc.*, 224 F.R.D. 462, 466-467 (N.D. Cal. 2004); *see also Stiller v. Costco*, No. 09-CV-2473-H (BLM), 2010 U.S. Dist. LEXIS 140297, at *6 (S.D. Cal. Dec. 13, 2010) (Huff, J.); *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 470-71 (E.D. Cal. 2010); *Kress v. PricewaterhouseCoopers*, *LLP*, 263 F.R.D. 623, 627-628 (E.D. Cal. 2009).

[30] The first step, the "notice stage," occurs at any time prior to (i) distribution of class notice and the end of the opt-in period *and* (ii) completion of *all* discovery.  *See e.g.*, *Ramirez*, 941 F. Supp. 2d at 1203; *Luque v. AT&T Corp.*, No. 09-05885 CRB, 2010 U.S. Dist. LEXIS 126545, at *8-9 (N.D. Cal. Nov. 19, 2010) ("'Courts in this circuit overwhelmingly refuse to depart from the notice stage analysis prior to the close of discovery [even] . . . [when] extensive discovery has already taken place'"); *Santiago v. Amdocs, Inc.*, 2011 U.S. Dist. LEXIS 146126, at *17 (N.D. Cal. Dec. 19, 2011).

[31] *See generally Carrillo*, 2012 U.S. Dist. LEXIS 26927, at *40-43 (citing *Hoffman-La Roche*); *Sabol*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

15

Plaintiffs' burden on a motion for conditional certification and authorization of notice is notably low.  Since the prevailing issue is whether provisional certification should be granted to afford proposed class members an opportunity to preserve their claims, courts follow a "lenient" standard which "typically results in certification."  *E.g.*, *Russell v. Wells Fargo & Co.*, *Inc.*, No. C 07-3993 CW, 2008 U.S. Dist. LEXIS 78771, at *6 (N.D. Cal. Sept. 3, 2008).  Plaintiffs need only make a "modest" or "minimal" preliminary showing that they and the class members are "similarly situated" – for example, by setting forth "substantial allegations" that they were "victims of a single decision, policy or plan" or that there is some other "factual nexus" between their claims.[32]  Courts find that employees are "similarly situated" under § 216(b) in cases where their "causes of action accrued in approximately the same manner as those of the named plaintiffs."[33]

Given the "very low" standard for conditional certification, Plaintiffs' burden may be met by pleadings and declarations alone.[34]  At this stage, a "fact-intensive" inquiry is improper.[35]  Courts do

---

*v. Apollo Group*, *Inc.*, No. 09-CV-3439, 2010 U.S. Dist. LEXIS 47145, at *9 (E.D. Pa. May 12, 2010) ("[I]n order to serve the objectives of [§ 216(b)] . . . courts have allowed the conditional certification of a class . . . before significant discovery . . . because the statute of limitations continues to run on unnamed class' members' claims until they opt into the collective action."); *Gortat v. Capala Bros.*, No. 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010) (because of opt-in requirement, "early certification and notice are favored in order to protect plaintiffs' rights."); *Austin v. Cuna Mut. Ins. Soc'y*, 232 F.R.D. 601, 605-606 (W.D. Wis. 2006).

[32] *See*, *e.g.*, *Hill*, 690 F. Supp. 2d at 1009 (N.D. Cal. 2010) ("some identifiable factual or legal nexus"); *Lewis*, 669 F. Supp.2d at 1127-28; *Ramirez*, 941 F. Supp. 2d at 1203 (plaintiffs need only provide "substantial allegations, supported by declarations or discovery," of a common policy or practice affecting the class) (internal citations and quotations omitted); *Sanchez*, 2012 U.S. Dist. LEXIS 99924, at *6 ("the court requires little more than substantial allegations that the . . . class members were together the victims of a single decision, policy, or plan");  *Kress*, 263 F.R.D. at 628-29; *Gomez v. H & R Gunlund Ranches*, *Inc.*, No. CV F 10-1163, 2010 U.S. Dist. LEXIS 137736, at *7, 19 (E.D. Cal. Dec. 16, 2010).

[33] *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011).  *Cf. Andrako v. United States Steel Corp.*, 788 F. Supp. 2d 372, 379 (W.D. Pa. 2011) (applying stage-two decertification standard: "Plaintiffs contend that this common pay practice outweighs any factual or employment differences . . . .  After careful consideration, I agree with Plaintiffs that this factor of the analysis weighs against decertification.").

[34] *See*, *e.g.*, *Ramirez*, 941 F. Supp. 2d at 1203; *Sanchez*, 2012 U.S. Dist. LEXIS 99924, at *6; *Stiller*, 2010 U.S. Dist. LEXIS 140297, at *11; *Luque v. AT&T Corp.*, No. C 09-05885, 2010 U.S. Dist. LEXIS 126545, at *7; *Kress* 263 F.R.D. at 627; *Escobar*, 2008 U.S. Dist. LEXIS 68439, at *9; *Adams*, 242 F.R.D. at 536; *Stanfield v. First NLC Fin. Servs.*, No. C06-3892 SBA, 2006 U.S. Dist. LEXIS 98267, at *7 (N.D. Cal. Nov. 1, 2006); *Leuthold*, 224 F.R.D. at 467.

---

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

16

not consider the merits of plaintiffs' claims nor resolve disputed issues of fact when evaluating whether court-authorized notice is appropriate.[36]   For example, a defendant's assertion that adjudication of the action would require detailed individualized inquiries is not a basis for denying conditional certification.[37]   In fact, Plaintiffs' burden is so low at the notice stage that courts routinely disregard defendant's competing evidence.[38]   "It is sufficient for conditional certification that plaintiffs attest to knowledge of similarly situated co-workers or complain of a company-wide policy." *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269, at \*19 (E.D.N.Y. Jan. 19, 2012); *see also Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008) (plaintiff need only show "a 'reasonable basis' for his claim that there are other similarly situated employees"); *Woods v. RHA/Tennessee Group Homes, Inc.*, 803 F. Supp. 2d 789, 796 (M.D. Tenn. 2011) (plaintiffs need only show a "colorable basis" for their claim that a class of "similarly situated plaintiffs exists").

Plaintiffs and the members of the collective action need not be similarly situated in every

[35] *See Harris v. Vector Mktg.Corp.*, 716 F. Supp. 2d 835, 841-42 (N.D. Cal. 2010); *Villa v. United Site Servs. of Cal., Inc.*, No. 5:12-CV-00318-LHK, 2012 U.S. Dist. LEXIS 162922, at \*40-41 (N.D. Cal. Nov. 13, 2012); *Labrie*, 2009 U.S. Dist. LEXIS 25210, at \*15-17, 20-21; *Kress*, 263 F.R.D. at 631; *Russell*, 2008 U.S. Dist. LEXIS 78771, at \*8-10.

[36] *See*, *e.g.*, *Mowdy v. Beneto Bulk Trans.*, No. C 06-05682, 2008 U.S. Dist. LEXIS 26233, at \*19 (N.D. Cal. Mar. 31, 2008) ("[I]t is inappropriate for the court to entertain an inquiry on the merits. The fact that such an inquiry will be necessary in the future [after further discovery] does not constitute a sufficient ground to prevent [prospective] class members from receiving notice.")

[37] *See Sanchez*, 2012 U.S. Dist. LEXIS 99924, at \*12; *Stanfield*, 2006 U.S. Dist. LEXIS 98267, at \*9-13; *Harris*, 716 F.Supp.2d at 841; *Labrie*, 2009 U.S. Dist. LEXIS 25210, at \*20-21; *Gilbert v. Citigroup, Inc.*, No. 08-0385. 2009 U.S. Dist. LEXIS 18981, at \*10 (N.D. Cal. Feb. 18, 2009); *Escobar*, 2008 U.S. Dist. LEXIS 68439, at \*13.

[38] *See*, *e.g.*, *Lewis v. Nev. Prop. 1, LLC*, No.: 2:12-cv-01564-MMD-GWF, 2013 U.S. Dist. LEXIS 8945, at \*26 (D. Nev. Jan. 22, 2013) (certifying case based on three declarations, where employer submitted 97 declarations);   *Brewer v. Gen. Nutrition Ctrs.*, No. 11-CV-03587, 2013 U.S. Dist. LEXIS 2948, at \*12-14 (N.D. Cal. Jan. 7, 2013) (defendant's time and payroll records and declarations cannot negate plaintiff's showing); *Sanchez*, 2012 U.S. Dist. LEXIS 99924 at \*13 ("courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants"); *Luque*, 2010 U.S. Dist. LEXIS 126545, at \*14 (disregarding defendant's submission of 30 employee declarations and finding that plaintiffs satisfied first-stage notice standard); *Harris*, 716 F. Supp. 2d at 838;   *Lewis*, 669 F. Supp. 2d at 1128 (disregarding 54 declarations submitted by employer); *Labrie*, 2009 U.S. Dist. LEXIS 25210, at \*20 & n.7; *Kress*, 263 F.R.D. at 628; *Escobar*, 2008 U.S. Dist. LEXIS 68439, at \*12.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

17

respect, only "with respect to their allegations that the law has been violated."[39]   Therefore, the

employment situations of the notified class members need not be identical.   Courts broadly authorize

notice to employees allegedly affected by a common policy or practice regardless of job title, location,

or reporting relationships: "Class treatment . . . is not defeated simply because . . . the plaintiffs

performed a variety of jobs in a number of [groups] [in] different locations."   *Heagney v. European*

*Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988).[40]   It is unnecessary to produce evidence related to

employees in each location or job category; evidence from a small percentage of the class will suffice.

Indeed, courts in this Circuit frequently grant conditional certification and notice based on "a handful

of declarations."   *Harris v. Vector Mktg.Corp.*, 716 F. Supp. 2d 835, 838, 845 (N.D. Cal. 2010)

(plaintiffs submitted four declarations, out of class of thousands).[41]

---

[39] *E.g.*, *Hallissey v. Am. Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (citations omitted); *accord Carrillo*, 2012 U.S. Dist. LEXIS 26927, at *46 (opt-ins need only be similarly-situated to named plaintiffs "with respect to the disputed claims").

[40] *See also*, *e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 18594, at *32-45 (N.D. Cal. Feb. 13, 2014) (conditionally certifying class encompassing nine job titles in three job families); *Lewis*, 669 F. Supp. 2d at 1128 ("Courts routinely grant conditional certification of multiple-job-title classes"); *Luque*, 2010 U.S. Dist. LEXIS 126545, at *13-14 ("no requirement that Plaintiffs have a representative from each department"); *Russell*, 2008 U.S. Dist. LEXIS 78771, at *8-10 (certifying class of employees in three positions although there were only declarants from two and company argued third was dissimilar); *Wong v. HSBC Mortg. Corp. (USA)*, No. C-07-2446 MMC, 2008 U.S. Dist. LEXIS 21729, at *8-9 (N.D. Cal. Mar. 19, 2008) (conditionally certifying class encompassing varying job titles); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823, at 9 (N.D. Cal. Mar. 28, 2006) (same); *Edwards v. City of Long Beach,* 467 F.Supp.2d 986, 990 (C.D. Cal. 2006) ("[p]laintiff need not show that his position is or was identical to the putative class members' positions").   *Accord Moore v. Publicis Groupe SA*, No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675, at *22-24, 32-38 (S.D.N.Y. June 28, 2012) (certifying EPA class of Vice Presidents, Senior Vice Presidents, Senior Vice President/Directors and Senior Vice President/Deputy Managing Directors and recognizing that "[c]ourts have conditionally certified classes where the plaintiffs have different job functions"); *Diaz v. S&H Bondi's Dep't Store, Inc.*, No. 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683, at *6 (S.D.N.Y. Jan. 17, 2012) (employees in different locations similarly situated when they complain about the same allegedly-unlawful compensation practice); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp.2d 752, 764-65 (W.D. Tenn. 2011) (refusing to limit scope of proposed class encompassing different positions where employees were allegedly affected by common practice); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 54-56 (S.D.N.Y. 2005) (nationwide class of employees in three positions at 108 facilities in 21 states).

[41] *See, also, e.g.*, *Nev. Prop. 1, LLC*, 2013 U.S. Dist. LEXIS 8945, at *23-27 (plaintiffs submitted 3 declarations for class of up to 3,700 employees); *Brewer*, 2013 U.S. Dist. LEXIS 2948, at *2, 10-12 (certifying nationwide class of 8,000 Sales Associates and Assistant Managers based on five class-member declarations and other evidence); *Villa*, 2012 U.S. Dist. LEXIS 162922, at

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

18

Even in a stage-two decertification motion, the similarly-situated standard is "considerably less stringent" than the requisite Rule 23 showing. *Hill*, 690 F. Supp. 2d at 1009 (internal quotation omitted); *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). *Accord Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1003 (N.D. Cal. 2010); *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584-86 (6th Cir. 2009); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001); *Ayers v. SGS Control Servs.*, No. 03 Civ. 9078, 2007 U.S. Dist. LEXIS 19634, at *16 (S.D.N.Y. Feb. 26, 2007).[42]   As a general matter, even at the heightened post-discovery decertification

---

*40-41 (certifying based on complaint and three declarations, despite more than 200 declarations submitted by employer); *Sanchez*, 2012 U.S. Dist. LEXIS 99924, at *11 (plaintiff submitted four declarations out of nationwide class employed at more than 280 stores); *Carrillo*, 2012 U.S. Dist. LEXIS 26927, at *45-46 (two declarations); *Helton v. Factor 5, Inc.*, No. C 10-04927 SBA, 2012 U.S. Dist. LEXIS 88440, at *13-14 (N.D. Cal. June 25, 2012) (three declarations); *Kress*, 263 F.R.D. at 630-31 (notice to nationwide class based on "some evidence" of similarity, including "several" declarations and depositions); *Newton v. Schwarzenegger*, No. C 09-5887 VRW, 2010 U.S. Dist. LEXIS 64008, at *11-12 (N.D. Cal. June 7, 2010) (seven declarations out of class of thousands of correctional officers); *Gilbert*, 2009 U.S. Dist. LEXIS 18981, at *11-13 (conditionally certifying 878-member nationwide class based on declarations from five employees who worked in seven branches in California and evidence that all class members subject to same compensation system); *Escobar v. Whiteside Constr. Corp.*, No. C 08-01120 WHA, 2008 U.S. Dist LEXIS 68439, at *10-11, 14 (N.D. Cal. Aug. 21, 2008) (authorizing notice to 292-member class based on complaint and declarations from three named plaintiffs); *Leuthold*, 224 F.R.D. at 468 (complaint and affidavits from three lead plaintiffs). *Accord Jewell v. Aaron's Inc.*, No. 1:12-CV-0563-AT, 2012 U.S. Dist. LEXIS 92285, at *26-29 (N.D. Ga. June 28, 2012) (authorizing notice to nationwide based on declarations from only 0.05% of proposed class and 1.1% of defendant's stores); *Pippins v. KPMG, Inc.*, No. 11 Civ. 0377 (CM) (JLC), 2012 U.S. Dist. LEXIS 949, at *3-9, 24-25 (S.D.N.Y. Jan. 3, 2012) (nationwide notice based largely on six declarations); *Titchenell v. Apria Healthcare, Inc.*, No. 11-563, 2011 U.S. Dist. LEXIS 129475, at *15-18 (E.D. Pa. Nov. 8, 2011) (one deposition and two affidavits out of nationwide class of 2,087 employees); *Miller v. Jackson, Tennessee Hosp. Co., LLC*, No. 3:10-1078, 2011 U.S. Dist. LEXIS 29011, at *8, 17-20 (M.D. Tenn. Mar. 21, 2011) (three declarations out of class of 579 employees in multiple positions); *Ebbert v. Nassau Cty.*, No. 05-CV-5445 (FB) (AKT), 2007 U.S. Dist. LEXIS 58344 (E.D.N.Y. Aug. 9, 2007) (EPA class of around 200 current and former female Police Communications Officers and Supervisors upon allegations of four plaintiffs).

[42] *See also*, *e.g.*, *Sanchez*, 2012 U.S. Dist. LEXIS 99924, at *10-11; *Myers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010) (conditional certification inquiry "is quite distinct from the question whether plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes"); *Diaz*, 2012 U.S. Dist. LEXIS 5683, at *11 ("no showing of numerosity, typicality, commonality, or representativeness need be made. As a result, the similarly situated standard for authoring that notice be made to potential opt-in plaintiffs is considerably more liberal than class certification under Rule 23.") (internal quotations and citations omitted); *Pippins*, 2012 U.S. Dist. LEXIS 949, at *19-20 (holding that, because Rule 23 standards do

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

19

phase: "a close call as to whether plaintiffs are similarly situated should be resolved in favor of certification." *Crawford v. Lexington-Fayette Urban Country Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 56089, at *7 (E.D. Ky. July 22, 2008) (internal citations and quotations omitted).

In sum, in furtherance of the broad remedial purposes of the FLSA/EPA, any doubts as to the propriety and scope of conditional certification must be resolved in favor of the class. Courts have regularly held that there is no prejudice to employers from collective action notice and have broadly authorized notice to all employees who might be affected by a common policy or practice. After the completion of discovery, courts make a determination on a full record as to whether the class is "similarly-situated" and thus may proceed as a collective action. As summarized in *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55-56 (S.D.N.Y. 2005):

> Courts have recognized that it is best to authorize a collective action and then wait to see what the facts bear out . . . the sending of notice does not prejudice the defendant precisely because it is preliminary and may be revisited if it later appears, after appropriate discovery, that the additional plaintiffs who opt to join the lawsuit, if any, are not similarly situated.[43]

**B.     Plaintiffs' Evidence is More Than Sufficient to Meet the Minimal Standard for Conditional Certification and Authorize Notice to the Proposed Class Members.**

Plaintiffs' preliminary evidence far surpasses the showing required to meet their minimal burden at the notice stage. First, deposition testimony, declarations, job descriptions, and other documents demonstrate that members of the proposed class share substantially similar job duties.[44] Second, Plaintiffs identify common policies that apply to all employees in the proposed class, as well as evidence of centralized decision-making. Specifically, Plaintiffs proffer evidence that a discrete, predominantly male group of sales leaders made all relevant compensation decisions for Plaintiffs and the proposed collective action class (as well as their male counterparts). Finally, and most importantly,

---

not apply to collective action certification under § 216(b), "the Supreme Court's recent seminal class action decision in *Wal-Mart Stores, Inc. v. Dukes* . . .  is inapplicable in the FLSA context.").

[43]*See also*, *e.g.*, *Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F.Supp.2d 340, 355 (E.D.N.Y. 2012); *Brasfield v. Allen*, 257 F.R.D. 641, 644 (W.D. Tenn. 2009) (notice to expanded class based on evidence of nationwide policies "promotes . . . justice" and "judicial efficiency," "avoids duplicative actions," and does not cause substantial prejudice); *Smith v. C.H. James Rest. Holdings, L.L.C.*, No. 11 C 5545, 2012 U.S. Dist. LEXIS 48065, at *12 (N.D. Ill. Apr. 5, 2012).

[44] Further, all of the members of the class come within the same category of workers: field sales employees in DSI's Sales Division.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

20

Plaintiffs raise more than substantial allegations that these common policies and practices had a class-wide discriminatory effect.  Deposition testimony and declarations from 31 class employees point to a common discriminatory scheme: like the Named Plaintiffs, women in the proposed EPA Class attest that they were paid less than their male counterparts for performing the same work.  Collectively, the evidence strongly suggests a "factual nexus" between Plaintiffs' claims and the potential claims of the proposed collective action members, and to justify conditional certification and authorization of notice.

> ### 1.    Plaintiffs and the Members of the EPA Class Were Victims of a Common Discriminatory Scheme, Effectuated Through Common Policies and Implemented By Centralized Decision-makers.

Courts typically grant conditional certification and notice where the plaintiffs provide some evidence that they and the potential class members were together victims of a "common discriminatory scheme," or a "single decision, policy, or plan."  *See*, *e.g*., *Deane v. Fastenal Co.,* No. C 11-00042, 2011 U.S. Dist. LEXIS 131178, at *7 (N.D. Cal. Nov. 14, 2011) (courts require "nothing more than substantial allegations, supported by declarations or discovery, that 'the putative class members were together the victims of a single decision, policy or plan'") (internal citation omitted).[45]

Here, Plaintiffs allege a common policy or practice of paying DSI's female sales employees less than their male counterparts for doing the same work.  *See* discussion *supra* Part II.E.  As demonstrated above, DSI's discriminatory scheme is effectuated through centrally-promulgated compensation policies, which apply across the proposed class and are implemented by a male-dominated core of decision-makers.  *See* discussion *supra* Part II.D.  This resembles or exceeds the evidence and allegations deemed sufficient in other EPA conditional certification decisions.  *See*, *e.g*., *Moore v. Publicis Groupe SA,* No. 11 Civ. 1279, 2012 U.S. Dist. LEXIS 92675 ; *Ebbert v. Nassau*

---

[45] *See also Moore,* 2012 U.S. Dist. LEXIS 92675, at *33 (finding EPA "Plaintiffs [had] met their burden by making a *modest* factual showing to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law"); *Rehwaldt v. Electronic Data Sys. Corp*., No. 95-876, 1996 U.S. Dist. LEXIS 22125, at *13 (W.D.N.Y. Mar. 28, 1996) ("Although the information provided by the plaintiff is not strong or conclusive, given the remedial nature of the FLSA . . . without regard to the substantive merit of the [] claims, the plaintiff has set forth a sufficient factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme.")

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

21

*Cty.*, No. 05-CV-5445 (FB) (AKT), 2007 U.S. Dist. LEXIS 58344, at *4-7 (E.D.N.Y. Aug. 9, 2007) (plaintiffs met their burden by making a modest factual showing that "as a result of a common pay scale, they were paid wages lower than the wages paid to men for the performance of substantially equal work"); *Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 4-5 (D.D.C. 2002); *Rehwaldt v. Electronic Data Sys. Corp.*, 1996 U.S. Dist. LEXIS 22125, at *13 (W.D.N.Y. Mar. 28, 1996) (conditionally certifying class of all female employees who worked in same business unit as plaintiff where she (i) alleged that she and other women in the proposed class were paid less than male employees doing essentially the same work and (ii) "submitted wage and bonus information relating to herself, one other female co-employee and one male co-employee"); *Garner v. G.D. Searle Pharmas. & Co.*, 802 F. Supp. 418, 422-24 (M.D. Ala. 1991) (conditionally certifying class where named plaintiffs identified female sales representatives with male comparators).

In addition, there is ample testimonial and other evidence demonstrating that the Plaintiffs are similarly situated to members of the proposed class with respect to their allegations that DSI violated the EPA. The six Named Plaintiffs have testified about the pay discrimination they experienced at DSI. *See e.g.,* Named Plaintiffs' Declarations (Exs. 26-31). They have also come forward with "evidence tending to indicate that '*at least some*' female employees were paid less than their equally qualified male counterparts, and that those employees are similarly situated to plaintiffs.'" *Rochlin v. Cincinnati Ins. Co.*, No. IP 00-1898-C, 2003 U.S. Dist. LEXIS 13759, at *44-51 (S.D. Ind. July 8, 2003) (emphasis added) (internal citations omitted) (authorizing notice to *all* female employees in two departments as well *all* female attorneys in Legal Department working in multiple divisions in various locations around the country).

While courts routinely grant conditional certification based on as few as one or two declarations,[46] here 31 members of the proposed Sales Class from a range of geographic locations and have submitted deposition testimony and/or declarations. All of these women attest to DSI's common compensation policies and a well-founded belief that they were paid less than their male counterparts for performing the same work. *See* discussion *supra* Part II.E. *Cf.*, *e.g.*, *Chapman v. Fred's Stores of*

---

[46] *See* n. 41, *supra*.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

22

*Tenn., Inc.*, No. 2:08-cv-01247-HGD, 2013 U.S. Dist. LEXIS 58069, at *22, 25-27 (N.D. Ala. Mar. 15, 2013) (certifying nationwide EPA collective of thousands of assistant managers at more than 650 stores based on common job description, training manual, and pay provisions and plaintiffs' declarations "on information and belief" that female managers were paid less than similarly-situated men); *Collins v. Dollar Tree Stores, Inc.*, No. 2:08-v-1267-AKK, at *10 (N.D. Ala. Dec. 12, 2008) (attached as Ex. __) (authorizing nationwide EPA collective action notice to "similarly situated" employees based on "rather conclusory" allegations); *Colvert v. Dolgencorp, Inc.*, No. 2:06-CV-465-VEH (N.D. Ala. Nov. 30, 2007) (attached as Ex. _) (authorizing nationwide EPA notice to female Store Managers at more than 8,200 stores in 35 states based on 16 declarations).[47]

The fact that 25 potential class members (in addition to the six Named Plaintiffs) have already filed consent to join forms, even prior to receiving notice, further supports a finding that the Named Plaintiffs' experiences at DSI are similar to and representative of those of the proposed EPA class. *Cf. Gomez*, 2010 U.S. Dist. LEXIS 137736, at *15-16 ("[t]he number of plaintiffs who have already joined…gives rise to an inference that additional workers may join, if given notice of the lawsuit");

---

[47] The EPA prohibits discrimination "within any establishment in which . . . employees are employed." 29 U.S.C. § 206(d)(1). "While the EPA requires that the employees work in the same 'establishment' to whom they compare themselves concerning compensation . . . there is limited authority that district courts must engage in the establishment analysis when considering the certification of a collective action under the EPA." *Moore*, 2012 U.S. Dist. LEXIS 92675, at *34-36 (rejecting argument that plaintiffs were not "similarly situated" because they worked in different "establishments," *i.e.*, different offices). The "establishment" inquiry is a merits question going only to class members' appropriate male comparators rather than the propriety of certification. In fact, courts have often certified collective actions comprised of employees at multiple entities where there was a common policy or practice. *See, e.g.*, *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321, at *14-18 (S.D.N.Y. Nov. 30, 2005) (three affidavits supported notice to workers in nine classifications at four companies). At any rate, Plaintiffs will ultimately prove that the class members work in what is functionally one establishment; they all work "in the field" as a cohesive sales force regardless of geographic location, and are subject to centralized policies and procedures, job descriptions, and decision-making. *E.g.*, *Mullhall v. Advance Sec., Inc*., 19 F.3d 586, 591 (11th Cir. 1994) ("hallmarks of [a single establishment] are centralized control of job descriptions, salary administration, and job assignments or functions") (citation omitted); *Chapman*, 2013 U.S. Dist. LEXIS 58069, at *31 (recognizing as a hallmark of a single establishment: common job descriptions, procedure manual, and training manual as well as centralized review or control of compensation decisions); *American Fedn. of State, Cty. & Mun. Emples. v. Cty. of Nassau*, 609 F. Supp. 695, 706 (E.D.N.Y. 1985) ("physically separate work places can constitute a single establishment under the EPA if there is a significant functional interrelationship between the work of the employees in the various locations").

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

23

*Carrillo*, 2012 U.S. Dist. LEXIS 26927, at *46-47 (fact that numerous workers had already opted in meant that "class members exist who have the same claims as the existing plaintiffs").[48]   Accordingly, Plaintiffs "have met their burden of showing that there are potentially similarly situated class members who would benefit from receiving notice at this stage of the pendency of this action . . . ".  *Carrillo*, 2012 U.S. Dist. LEXIS 26927, at *45.

### 2.   Plaintiffs and the Members of the Proposed Collective Share Common Job Titles and Duties.

Courts grant conditional certification under § 216(b) where the plaintiffs present evidence that employees "nationwide are subject to the same job description, perform the same essential duties and responsibilities, and are required to have the same job qualifications." *See*, *e.g.*, *Aros v. United Rentals*, *Inc.*, 269 F.R.D. 176, 184 (D. Conn. 2010).  For example, in *Moore*, the Court concluded that the named plaintiffs and members of the proposed EPA class were "similarly situated" in part because the Company had uniform job descriptions for each position, and employees within each job were expected to perform the same duties regardless of location.  2012 U.S. Dist. LEXIS 92675, at *29-30 ("The submitted information shows that these females worked in various offices across the nation, but had similar responsibilities, despite geographic location. They worked on different client accounts, but the work was similar throughout each account and both male and female employees in other offices, with the same titles, performed substantially the same work as members of the putative class.")  *See also Benedict*, 2014 U.S. Dist. LEXIS 18594, at *9-14; *Chapman*, 2013 U.S. Dist. LEXIS 58069, at *25-26 (common job description, policy manual, and training manual showed that, despite store-to-store variations in the "particular focus" of Assistant Store Managers' jobs, "the basic duties an ASM is expected to fulfill remain the same, no matter to which store the ASM is assigned").

---

[48] Courts in this Circuit have uniformly and decisively rejected foreign jurisprudence requiring that plaintiffs demonstrate an interest in joining the suit.  *See*, *e.g.*, *Carrillo*, 2012 U.S. Dist. LEXIS 26927; *Gomez*, 2010 U.S. Dist. LEXIS 137736; *Hoffman v. Securitas Sec. Servs. USA*, *Inc.*, No. CV-07-502-S-EJL, 2008 U.S. Dist. LEXIS 123883, at *12-21 (D. Idaho Aug. 7, 2008); *Allerton v. Sprint Nextel Corp.*, No. 2:09-cv-01325-RLH-GWF, 2009 U.S. Dist. LEXIS 132454, at *37-39 (D. Nev. Nov. 16, 2009).

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

24

The same is true in this case.  DSI has uniform job descriptions, regardless of location, demonstrating that the Company views employees within each job category as similar.  *See* discussion *supra* Part II.C.1.  The Plaintiffs' deposition testimony and declarations confirm this fact.  *Id.* Together, this constitutes powerful evidence that the Named Plaintiffs and potential class members are similarly situated with respect to the EPA inquiry: they all shared similar job titles and duties and were subject to DSI's uniform compensation policies and practices.  *Cf., e.g.*, *Campanelli v. Hershey Co.*, No. C 08-1862, 2010 U.S. Dist. LEXIS 92364, at *8 (N.D. Cal. Aug. 13, 2010) ("similarly situated" standard met where all employees shared same job title and description, had same general job duties prescribed by corporate headquarters, and were subject to a uniform compensation plan and centrally-promulgated procedures); *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361 and 08 Civ. 11364, 2010 U.S. Dist. LEXIS 60202, at *17-18 (S.D.N.Y. June 15, 2010) (granting conditional certification where there was centralized corporate control and common job descriptions); *Ravenell v. Avis Budget Car Rental, LLC*, No. 08-CV-2113, 2010 U.S. Dist. LEXIS 72563, at *11-12  (E.D.N.Y. July 18, 2010) (same); *Aros*, 269 F.R.D. at 184 (same).

## IV.   <u>CONCLUSION</u>

Plaintiffs have amply demonstrated that there are similarly-situated employees within the proposed Sales Class who were subjected to DSI's common policies and practices.  Plaintiffs have also proffered evidence that such policies and practices resulted in disparate pay for members of the Sales Class.  Under the lenient standard governing § 216(b) collective actions, this is sufficient to warrant conditional certification.  If the Court denies this motion, it would be left with a critical mass of opt-in party Plaintiffs; relegating this matter to a multiplicity of separate individual actions would be inefficient and would contravene the policy behind the FLSA's collective action mechanism.  Accordingly, Plaintiffs ask the Court to conditionally certify the EPA collective action on the papers alone so that notice can be issued immediately.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

25

DATED: March 6, 2014

SANFORD HEISLER, LLP

*/s/ Felicia Medina*
Felicia Medina, Esq.
Chioma Chukwu, Esq.


*Attorneys for the Plaintiffs and the Class*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EQUAL PAY ACT
CONDITIONAL COLLECTIVE ACTION CERTIFICATION – No. C 13-00581 WHO (DMR)

26