UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA WELLENS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAIICHI SANKYO, INC.,<br><br>    Defendant. | Case No. 13-cv-00581-WHO<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION; GRANTING IN PART PLAINTIFFS' MOTION FOR TOLLING**<br><br>Re: Dkt. Nos. 84, , 116, , 120 |

    Plaintiffs are women who bring several claims against their employer, Daiichi Sankyo, Inc. (DSI), stemming from alleged gender discrimination. The question I must answer here is whether they have met their low evidentiary burden to justify conditional collective action certification of their Equal Pay Act claims and whether factors outside of their or their counsels' control justify further tolling of the EPA claims. For the reasons discussed below, I GRANT plaintiffs' motion for conditional certification and GRANT, in limited part, tolling through the end of the opt-in period.

## BACKGROUND

    Plaintiffs work or worked for defendant Daiichi Sankyo, Inc. (DSI) as Sales Representatives and District Managers. DSI manufactures and sells cardiovascular, diabetes, and metastatic melanoma therapies and pharmaceuticals. Plaintiffs' complaint, filed February 11, 2013, alleges the following causes of action: employment discrimination under Title VII (42 U.S.C. § 2000e); pregnancy and family discrimination under Title VII (42 U.S.C. § 2000e(k)); violation of the Equal Pay Act (29 U.S.C. § 206); violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12940) based on gender, pregnancy, and family discrimination; violation of the California Equal Pay Act (Cal. Labor Code § 1197.5); and violation of

California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200).[1]

Plaintiffs now move for conditional collective action certification of their Equal Pay Act claims (EPA, 29 U.S.C. § 206(d)) and for equitable tolling of the statute of limitations for the same. DSI opposes both motions. I heard argument on May 14, 2014.

## LEGAL STANDARD

### I.  CONDITIONAL COLLECTIVE ACTION CERTIFICATION

The Equal Pay Act, 29 U.S.C. § 206(d), is an amendment to the Fair Labor Standards Act (FLSA), and therefore incorporates FLSA's enforcement provisions and collective action requirements. *See, e.g., Anderson v. State Univ. of N.Y.*, 169 F.3d 117, 119 (2d Cir. 1999), *vacated on other grounds*, 528 U.S. 1111 (2000). Under 29 U.S.C. § 216(b), an employee may bring a collective action on behalf of other "similarly situated" employees.[2]

The majority of courts have adopted a two-step approach for determining whether a class is "similarly situated." *Harris v. Vector Mktg. Corp.*, C-08-5198 EMC, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010); *see also Daniels v. Aéropostale West, Inc.*, C-12-05755 WHA, 2013 U.S. Dist. LEXIS 59514, * 5 (N.D. Cal. Apr. 24, 2013). At step one, the court must determine whether the proposed class should be informed of the action. *Harris*, 716 F. Supp. 2d at 837. The "notice" stage determination of whether the putative class members will be similarly situated is made under a "fairly lenient standard" which typically results in conditional class certification. *Daniels*, 2013 U.S. Dist. LEXIS 59514,* 6. The plaintiff must make substantial allegations that the putative class members were subject to an illegal policy, plan, or decision, by showing that there is some factual basis beyond the "mere averments" in the complaint for the class allegations. *Id.*[3] The

---

[1] The Complaint also alleges a few individual causes of action brought by plaintiff Jacqueline Pena. Those claims are not at issue on these motions.
[2] This analysis is distinct from the Rule 23 class certification analysis. *See, e.g., Hill v. R+L Carriers, Inc.*, C-09-1907 CW, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010) ("collective actions under the FLSA are not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure for certification of a class action.").
[3] At step two, which occurs after discovery is completed, defendant may move to decertify the class and the court makes a factual determination whether the plaintiffs are similarly situated by weighing factors including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appeared to be individual to each plaintiff; and (3) fairness and procedural considerations. *Harris*, 716 F. Supp. 2d at 837.

question is essentially whether there are "potentially similarly-situated class members who would benefit from receiving notice at this stage of the pendency of this action as to all defendants." *Carrillo v. Schneider Logistics, Inc.*, 2012 U.S. Dist. LEXIS 26927, * 45 (C.D. Cal. Jan. 31, 2012).

Given the lenient standard at the notice stage, courts have held that the plaintiff bears a "very light burden" in substantiating the allegations. *Prentice v. Fund for Pub. Interest Research, Inc.*, C-06-7776 SC, 2007 U.S. Dist. LEXIS 71122, *5 (N.D. Cal. Sept. 18, 2007) ("Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage."). Courts have also rejected attempts by defendants to introduce evidence going to the merits of plaintiff's allegations at the notice stage. *See, e.g.*, *Labrie v. UPS Supply Chain Solutions, Inc.*, C-08-3182 PJH, 2009 U.S. Dist. LEXIS 25210, * 20 (N.D. Cal. Mar. 18, 2009) (rejecting defendant's evidence in evaluating conditional certification as "beyond the scope of this court's analysis in a first tier determination insofar as the evidence raises questions going to the merits of whether plaintiffs are sufficiently similarly situated to allow this action to proceed as a FLSA collective action, and is more appropriately considered as part of the court's analysis in a second tier determination on a motion to decertify after conditional certification is granted, notice has been given, the deadline to opt-in has passed, and discovery has closed."); *see also Harris*, 716 F. Supp. 2d at 838 ("A plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing. A handful of declarations may suffice . . . . The fact that a defendant submits competing declarations will not as a general rule preclude conditional certification.").

## II. EQUITABLE TOLLING

Under some circumstances, a court may equitably toll an otherwise applicable statute of limitations. "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). In the Ninth Circuit, "[c]ourts have equitably tolled the statute of limitations

in a FLSA action when doing so is in the interest of justice." *Castle v. Wells Fargo Fin., Inc.*, C-06-4347 SI, 2007 U.S. Dist. LEXIS 31206, *4 (N.D. Cal. Apr. 10, 2007). For example, during a stay pending a decision from the California Supreme Court on a state law issue (*id.*); where the court's discretionary case management decisions have led to procedural delay beyond the control of the putative collective action member (*Koval v. Pac. Bell Tel. Co.*, C-12-1627 CW, 2012 U.S. Dist. LEXIS 113196, *19-20 (N.D. Cal. Aug. 10, 2012)); or where defendant's unjustifiable delay prevented class members from learning about the litigation sooner. *Rai v. Santa Clara Valley Transp. Auth.*, C-12-4344 PSG 2013 U.S. Dist. LEXIS 109117, 4 (N.D. Cal. Aug. 2, 2013) (tolling FLSA statute "in the interests of fairness to the potential plaintiffs" because defendants unjustifiably refused to provide class member contact information to plaintiffs).

**DISCUSSION**

**I.    MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

Plaintiffs seek conditional certification of a class of around 1500 women, within six different job titles – specifically, all:

> Current, former, and future female sales employees in a sales representative and first level district manager role, including, without limitation, Sales Representative; Sales Representative I-V; Sales Specialist; Senior Sales Specialist; Senior Sales Professional; Cardiovascular ("CV") Specialty Sales Representative; CV Specialty Sales Representative I-III; Senior CV Specialty Sales Representative; Senior CV Specialty Sales Professional; Hospital Representative; Hospital Representative I-III; Senior Hospital Sales Representative; Hospital Sales Specialist; and Primary Care CV, Hospital District Manager who worked at any time in Defendant's sales organization in the United States during the applicable liability period.

Complaint, ¶ 116. Plaintiffs assert that DSI paid them less than their male peers for performing the same job duties in violation of the EPA.

Plaintiffs rely on declarations submitted by a geographically diverse group of 35 named plaintiffs and opt-in plaintiffs. *See* Declaration of Felicia M. Medina [Docket No. 16-1], Exs. 1-31; Reply Decl. of Felicia M. Medina [Docket No. 119-1], Exs. 1-4. The declarations follow the same general form: the named or opt-in plaintiff explains when she started working at DSI, whether she still works at DSI or when she left, and discusses the positions she has held and the

4

job duties for each position. The declarant also discusses her understanding that compensation policies are common and uniform and compensation levels are set by a small predominately male group ("sales leadership team"). The declarant concludes by identifying a male "comparator" who, according to the plaintiff, has the same job title and whose work required substantially equal skill, effort, and responsibility, but who was paid more than the declarant. *See also* Mot. for Certification at 12 (chart comparing salaries of declarants to comparators).

Plaintiffs argue that they were subjected to common compensation policies that apply in the same manner to all plaintiffs regardless of tier, job title, or geographic location.[4] They contend that the "sales leadership team" creates the compensation policies and implements compensation and other employment decisions.[5] Specifically along with select members of HR, plaintiffs assert that the Regional Directors always "recommend" and then approve the base salary for Sales Representatives.[6] The Regional Directors also recommend for approval by higher members of the leadership team the base salaries for District Managers.[7] Plaintiffs rely on deposition testimony to show that District Managers never have authority to make "final" pay decisions.[8]

Plaintiffs say that DSI's "Merit Increase Policy" applies in much the same manner to determine merit increases, with Regional Directors reviewing and approving the increases.[9] Regional Director determinations are then sent to the Division Presidents for final review and approval. *Id*.

Plaintiffs assert that the pay differentials are the result of a "discriminatory scheme" effectuated through uniform corporate policies that empowered the sales leadership team to make final pay decisions. The small group of mostly male decision-makers includes the Regional Directors, Area Business Directors, Vice President and President of Sales. Mot. for Certification at 3. As evidence of the general "disfavored" status of women at DSI, plaintiffs also rely on the

---

[4] Medina Decl., Exs. 54, 55 (policies).
[5] Medina Decl., Exs. 57-59 (regional and area business director job descriptions).
[6] Medina Decl., Exs. 57-58 (regional director job descriptions).
[7] *Id*.; *see also* Ex. 34, Deposition of Lara Hollinger at 45:21-46:21.
[8] Ex. 34, Hollinger Depo. 45:16-47:23; Ex 33, Deposition of Bernice Giovanni at 34:7-35:4.
[9] Hollinger Depo. 47:12-18.

1  evidence that while half of the sales representatives are females, only one-third of the district
2  managers are female, and the remaining upper-level management positions are almost exclusively
3  male.[10] Plaintiffs also rely on the "high" number of harassment and discrimination complaints to
4  characterize the environment at DSI as hostile to women. Mot. for Certification at 5-7.

5        Plaintiffs note that the six job titles they seek to represent are employed in three different
6  divisions: primary care (PC), cardiovascular (CV) and hospital. Within the job titles at issue, there
7  are tiering levels, but plaintiffs assert that a change in tiers does not change job duties, as the job
8  descriptions remain the same.[11] Plaintiffs also claim, citing to the plaintiffs' declarations as
9  support, that there is significant overlap in duties across the PC, CV, and Hospital field sales
10 markets.[12]

11       DSI attacks plaintiffs' evidence and submits a significant amount of its own. DSI first
12 argues that plaintiffs' evidence demonstrates that the compensation of plaintiffs is not based on
13 common policies, but on individualized decisions/situations. Oppo. to Certification at 12-13
14 (citing deposition testimony from plaintiffs that that discrimination occurred only after they
15 became pregnant, some salaries were low because managers did not recognize prior work, etc.).
16 That argument is more appropriately addressed at the second step of FLSA certification.[13] *See,*
17 *e.g., Gilbert v. Citigroup, Inc.*, C-08-0385 SC, 2009 U.S. Dist. LEXIS 18981, * 10 (N.D. Cal. Feb.
18 18, 2009) ("Defendants' concern about individualized inquiries does not require the Court to deny
19 conditional certification. . . . Under the two-stage certification procedure, Defendants can present
20 this evidence and make these arguments as part of a motion to decertify the class once discovery is

---

[10] Medina Decl., Exs. 43 (EEO Reports), 44-55 (organizational charts); *see also* Ex. 44 (women held less than 17% of positions at or above regional director).
[11] Medina Decl., Exs. 48-53.
[12] For example, under DSI policies, Sales Representatives across all three divisions are charged with: (i) building and developing relationships with key healthcare providers; (ii) serving as "disease state experts"; and (iii) implementing promotional strategies to increase selling opportunities. Medina Decl., Exs. 48-49, 53 (Sales Representative job descriptions).
[13] DSI also argues that because District Managers play a role in setting the compensation of the Sales Representative, plaintiffs' theme that the predominately male sales leadership team sets the salaries and effectuates the pay disparities is fatally undermined. Oppo. to Certification at 13-14. However, the policies and testimony are consistent that the District Manager's role is to implement the salaries "recommended" by HR and higher managers. The fact that the DMs may play a role in the margins of setting the salaries, does not undermine plaintiffs' ability to pursue a collective action at this juncture.

1    complete."). On this record, DSI has not shown that individualized decisions or situations would
2    negate plaintiffs' allegation of widespread compensation disparity based on gender in light of the
3    pay scales and ranges uniformly used by DSI for all positions.

4        DSI also contends that the compensation policies cannot be the "unlawful" policy that ties
5    together the purported class because those policies are gender-neutral and not illegal on their face.
6    Plaintiffs can, however, base their common policy claim on the unofficial policy of DSI (allegedly
7    effectuated by the sales leadership team) to unfairly compensate women. The evidence submitted
8    by plaintiffs consists primarily of their own declarations, identifying a male comparator, and their
9    contention that they were paid less than him. At this early stage and before the completion of
10   discovery, plaintiffs do not need to have full and complete evidence demonstrating the existence
11   or impact of the alleged policy.

12       DSI also challenges plaintiffs' declarations and moves to strike them, arguing that they are
13   formulaic, impermissibly argumentative, and contradict plaintiffs' deposition testimony. Oppo. to
14   Mot. for Certification at 19-20. The request to strike is DENIED. The declarations, while
15   formulaic and somewhat generalized in their assertions, are specific enough to meet plaintiffs'
16   burden for conditional collective certification. DSI also suggests that in order to meet their
17   burden, plaintiffs are required to rely on a statistical analysis showing widespread wage disparity.
18   Oppo. to Mot. for Certification at 15. However, while some plaintiffs have relied on statistical
19   analyses at the conditional certification stage, given the low burden at this stage, that type of
20   analysis is not required.

21       DSI also attacks the assumptions made by the declarants regarding their male comparators
22   as faulty. For example, DSI contends that while Pena and Bennie's salaries were lower than their
23   two male comparators for a period of time, the male comparators worked in different regions or
24   districts *and* those women's salaries soon surpassed their comparators, in part because of
25   promotions. Oppo. to Mot. for Certification at 15; Declaration of Blair Robinson [Docket No.
26   112], Exs A & B. Other women compare themselves to men in different tiers that are subject to
27   different salary scales. Robinson Decl., Exs. C-E. DSI contends that the plaintiffs intentionally
28   "cherry-picked" comparators from other districts in order to obscure the fact that "they often

earned more than men holding their positions within their districts." Oppo. to Mot. for Certification at 16-17 (challenging the comparators selected by eight of the 31 initial declarations).

The question here is not whether plaintiffs have proven their case that there is a widespread and discriminatory pay differential between men and women, but whether there is a reasonable basis to conclude that there are "potentially" similarly-situated class members who would "benefit" from notice. *See, e.g., Carrillo v. Schneider Logistics, Inc*., 2012 U.S. Dist. LEXIS 26927 at * 45. Whether it is fair to compare the salaries of women and men who are in different tiers or geographic locations – when plaintiffs provided evidence that the job descriptions for the different tiers and locations are the same – is a question to be resolved at the second step of the certification process.[14] Further, that in some years some subset of the plaintiffs may have earned more than comparator men would not undermine evidence that in other years, or portions of years, they have been paid less.[15] *Cf. Garner v. G.D. Searle Pharmaceuticals & Co*., 802 F. Supp. 418, 423 (M.D. Ala. 1991) ("In a representative suit under the EPA, however, plaintiffs are not required to establish that the entire class of females has been victimized.").

DSI argues that the employees within the proposed collective class cannot be similarly situated because the job duties for the various positions included in the class (*e.g.*, District Managers versus Sales Representatives versus Hospital Sales Specialist) vary widely. Oppo. at 18-25. Defendant, however, misperceives the question relevant to this conditional certification stage: are plaintiffs similarly situated with respect to their EPA allegations? *See, e.g., Carrillo,* 2012 U.S. Dist. LEXIS 26927 at * 46 (showing that class members are "similarly situated with respect to the disputed claims.").[16] Here, they are. Plaintiffs contend, as supported by their

---

[14] In support of its "cherry-picking" argument, DSI relies on two cases which held that *at the merits stage*, plaintiffs could not ignore the existence of men who were comparably paid and single out the highest paid men. *See Hein v. Oregon College of Education*, 718 F.2d 910, 916 (9th Cir. Or. 1983); *Huebner v. ESEC, Inc*., 2003 U.S. Dist. LEXIS 28289, *11-12 (D. Ariz. Mar. 26, 2003). These cases are inapposite on conditional certification.
[15] While DSI criticizes plaintiffs for not presenting a statistical analysis showing wide-ranging pay disparity based on gender, other than disputing aspects of the showings made by 8 of the 31 initial plaintiff declarations and a few discrete examples comparing plaintiffs to men in their districts or regions, DSI does not present a comprehensive or statistical analysis of the pay differential (or lack thereof) between men and women although it has the data to do so.
[16] DSI argues that at stage one, plaintiffs must demonstrate substantial similarity by demonstrating they satisfied the EPA statute: that the potential plaintiffs all performed "equal

8

declarations, that they were subjected to a policy at DSI to pay women less in violation of the EPA. They have made a preliminary showing that within their job titles, they are similarly situated. That DSI may pay different wages for different positions (within set ranges), that job duties vary between divisions and job titles, and that different positions are compensated differently based on location, are not factors that defeat conditional certification. Instead, whether the "disparate factual and employment settings of the individual plaintiffs" means that this case cannot proceed collectively, or would need to be prosecuted with subclasses for each of the job titles or geographic locations, is a matter to be determined at the *second* stage of the certification process. *See, e.g.*, *Harris*, 716 F. Supp. 2d at 837.[17]

None of the defenses raised by DSI is precluded at the second stage of the certification process. But plaintiffs have cleared the fairly lenient standard for conditional certification of their Equal Pay Act claims.

## II. MOTION FOR EQUITABLE TOLLING

Plaintiffs ask the Court to toll the statute of limitations for all EPA class members from April 12, 2013 through the end of the opt-in period. Mot. for Tolling at 1. Plaintiffs argue that tolling is necessary because delays outside of their control prevented them from filing the motion for conditional certification earlier. Those delays include: DSI's filing a "baseless" motion to transfer venue; the Court's delay in holding a CMC, due in part to the reassignment of this case; and DSI's delays in producing discovery that plaintiffs argue was necessary to both investigate the strength of the EPA claims and to move for conditional certification. None of those reasons justifies tolling.

---

work" requiring "equal skill, effort and responsibility" under "similar working conditions." Oppo. to Mot. to Certification at 11, 18. The case DSI relies on for that proposition, M*oore v. Publicis Groupe SA,* 2012 U.S. Dist. LEXIS 92675, * 32 (S.D.N.Y. June 28, 2012), actually rejected that standard. The *Moore* Court held that it "cannot hold Plaintiffs to a higher standard simply because it is an EPA action rather an action brought under the FLSA," and instead applied the more lenient standard requiring plaintiff to "demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. at * 31-33.

[17] Also before the Court is plaintiffs' administrative motion to file under seal unredacted copies of four opt-in plaintiff declarations. Docket No. 120. Consistent with the Court's prior ruling sealing the names of the male comparators for purposes of these motions, Docket No. 115, plaintiffs' narrowly tailored administrative motion to file under seal is GRANTED.

Defendant's venue motion was filed promptly, had a good faith basis (seeking transfer to New Jersey, where DSI has its principal place of business), and was decided prior to the noticed hearing date. *See also Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 U.S. Dist. LEXIS 113519, * 25 (N.D. Cal. Aug. 9, 2013) ("good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims."). It is not a reason to toll.

The reassignment did not cause significant delay. In light of the motion to transfer, the parties stipulated to continue the initial CMC to July 24, 2013. After the case was reassigned, a CMC was held on August 6, 2013. The 13 day continuance in CMC dates was not significant.

The breadth of the claims at issue (EPA, gender discrimination, pregnancy discrimination)means that wide-ranging discovery has been sought and allowed in this case. That necessitated phasing discovery with the deadline for Phase I on January 31, 2014. Therefore, some delay was necessitated by the scope of the case as defined by the plaintiffs. Moreover, while plaintiffs complain that defendant failed to produce all required discovery by the January 31, 2014 Phase I deadline – including the contact information for the absent class members (produced by March 10, 2014 under Judge Ryu's order); discrimination complaints (completely produced by March 14, 2014); and discrimination complaint logs (produced by March 14, 2014) – plaintiffs do not show that they could not have filed their motion for conditional certification without this discovery. In fact, they filed that motion on March 6, 2014 without it.

Finally, while plaintiffs complain that the discovery they actually relied on in their motion for conditional certification – job descriptions and aggregate workforce data (EEO reports) – was requested in May 2013, but only produced in late October and on January 3, 2014, the Court does not find that those productions justify tolling. The production occurred within the January 31, 2014 timeframe set by the Court. Further, it does not appear that DSI simply withheld all discovery until the end of 2013 and early 2014, but rather that the parties were meeting and conferring on how to best organizes defendant's rolling production in light of the breadth of discovery requested.

Plaintiffs also ask to toll the time between the hearing on the motion for conditional certification and the end of the opt-in period, noting that courts have frequently tolled the time

during which they have a motion for conditional certification under consideration. Mot. for Tolling at 13. I have ruled on the motion for conditional certification promptly after the hearing date. Nonetheless, considering that potential opt-in plaintiffs may not know about their EPA claims (because they may not know about the alleged gender pay disparity, unlike a FLSA misclassification or donning and doffing case where the potential opt-in plaintiffs know about their classification and time requirements to prepare for their work), I find it appropriate to toll the EPA statute of limitations from the date of the hearing on the motion for conditional certification through the end of the opt-in period.

Therefore, the EPA claims are tolled from April 16, 2014 (the original hearing date on plaintiffs' motion for conditional certification) through the end of the period allowing for potential plaintiffs' to opt into the conditionally certified class.

### III.  NOTICE

The parties shall meet and confer as to the form of and timing for the opt-in notice and attempt to agree on those matters within fourteen (14) days of the date of this Order. If the parties' cannot agree, they shall submit their proposals to me within fourteen (14) days of the date of this Order and I will determine the matters promptly.

### CONCLUSION

For the foregoing reasons, I GRANT plaintiffs' motion for conditional collective action certification. I also GRANT in part the motion for equitable tolling. The EPA statute of limitations shall be tolled from April 16, 2014 through the end of the opt-in period.

**IT IS SO ORDERED**.

Dated: May 22, 2014

WILLIAM H. ORRICK
United States District Judge