SACHA STEENHOEK, State Bar No. 253743
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Tower
San Francisco, CA 94105
Tel: (415) 442-1267/Fax: (415) 442-1001
ssteenhoek@morganlewis.com

GEORGE A. STOHNER, State Bar No. 214508
SARI M. ALAMUDDIN (*Pro Hac Vice*)
ALLISON N. POWERS (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601-5094
Tel: (312) 324-1000/Fax: (312) 324-1001
gstohner@morganlewis.com
salamuddin@morganlewis.com
apowers@morganlewis.com

BLAIR J. ROBINSON (*Pro Hac Vice*)
A. KLAIR FITZPATRICK (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
blair.robinson@morganlewis.com
kfitzpatrick@morganlewis.com

*Attorneys for Defendant*
*Caption continued on following page*

| | |
|---|---|
| SARA WELLENS, KELLY JENSEN, JACQUELINE PENA, BERNICE GIOVANNI, LARA HOLLINGER, and JENNIFER BENNIE on behalf of themselves and all others similarly situated, <br><br> **PLAINTIFFS**, <br><br> v. <br><br> DAIICHI SANKYO, INC. <br><br> **DEFENDANT**. | Case Number: C 13-0581 WHO <br><br> **JOINT LETTER REGARDING OPT-IN DISCOVERY DISPUTE** |

Felicia Medina (SBN 255804)
Elizabeth Gropman (SBN 294156)
**SANFORD HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 795-2020 (main)
(415) 795-2021 (fax)
fmedina@sanfordheisler.com
egropman@sanfordheisler.com

*Attorneys for Plaintiffs*

Dear Judge Ryu:

We write regarding a discovery dispute between the parties in the above- captioned matter. The parties met and conferred in good faith over several weeks, in compliance with Your Honor's procedures. The issue is ripe for the Court's disposition.

*Issue Before the Court*

On February 11, 2013, Plaintiffs filed suit alleging, among other claims, that they and other female Sales Representatives and District Managers nationwide were paid less than their male counterparts in violation of the Equal Pay Act ("EPA"). On May 22, 2014, Judge Orrick conditionally certified an EPA collective. Notice of the Action was then sent to 1,390 female employees, and 209 individuals filed consent forms with the Court to opt-in to the Action as Plaintiffs, in addition to the six named plaintiffs and 33 individuals who opted in before notice went out. Thus, a total of 248 individuals opted into the EPA collective action ("opt-ins" or "Opt-In Plaintiffs"). Defendant Daiichi Sankyo ("DSI") seeks to serve interrogatories on the 213 Opt-In Plaintiffs who did not submit declarations in support of Plaintiffs' Motion for EPA Conditional Collective Action Certification ("Plaintiff's Motion"). Plaintiffs oppose this request. Plaintiffs' offer of compromise is to allow written discovery on a total of 40 Opt-In Plaintiffs, including the 25 individuals that the parties together designate to be deposed and 15 other randomly selected Opt-In Plaintiffs.[1]

The parties' respective positions on this issue are detailed below. Additionally, and as requested in Your Honor's procedures, the parties note that a case management conference with Judge Orrick will take place on December 2, 2014. The parties intend to propose a revised schedule governing the remainder of the case with the case management conference statement that is due to Judge Orrick on or before November 25, 2014. Judge Orrick has scheduled a class certification hearing for May 13, 2015. There are no other deadlines in place.

*Plaintiffs' Position*

DSI's request for written discovery from <u>all</u> 213 remaining opt-ins should be denied. Such individualized discovery is overly burdensome and would significantly delay this litigation. Responding to this volume of discovery, even with limits imposed on the subject matter, would take several months, as it involves contacting and reviewing responses from women across the nation. Meanwhile, Plaintiffs will be defending 25 depositions, taking their own depositions, and reviewing targeted ESI from Defendant in anticipation of Plaintiffs' Class Certification brief. Representative discovery of a sample of Opt-in Plaintiffs is the more reasonable approach, amounting to DSI obtaining discovery in the form of depositions, declarations, and written discovery from nearly <u>20% of the opt-in class</u>. This percentage exceeds the amount of discovery that a litany of courts have approved in employment cases. Lastly, Plaintiffs' proposal will not prejudice DSI. DSI will have ample ability and evidence to develop its defenses and file its anticipated Motion for Decertification, which will include an expert report challenging the pay

---

[1] The parties have not included a draft of the requests as an exhibit because DSI has not officially served them, and Plaintiffs have not prepared formal objections. Rather, DSI provided Plaintiffs with a draft of the proposed discovery during the meet and confer process. The content of the proposed discovery is discussed below.

1
Case No. C 13-0851 WHO – JOINT DISCOVERY DISPUTE LETTER

disparities the opt-ins have alleged.  Plaintiffs are mindful of this Court's order postponing opt-in discovery until after the notice period ended, as well as Judge Orrick's order granting conditional certification.  Nowhere in these orders did the courts condone serving discovery of this magnitude on all 213 remaining opt-ins.  Nor should the Court at this juncture order such burdensome and unnecessary discovery.  Plaintiffs respectfully request the Court adopt Plaintiffs' proposal to allow opt-in discovery on 40 individuals, 15 of which should be randomly selected.

**A. Individualized Discovery Will Unduly Burden Plaintiffs and Unnecessarily Delay this Litigation.**

DSI's professed need for individualized discovery is far outweighed by the burden and expense it would impose on Plaintiffs. Facilitating and reviewing interrogatory responses and document productions from <u>all</u> 213 remaining opt-ins from around the country would consume enormous time and resources.  Even if written discovery is limited to four interrogatories, Plaintiffs' counsel would have to facilitate and review responses to close to one thousand interrogatories in the aggregate.  Placing such an unreasonable burden on Plaintiffs would therefore further delay this litigation, as collecting, reviewing and returning responses to approximately one thousand interrogatories could take <u>several</u> months. This is not a burden Plaintiffs should bear, especially, whereas here, a more reasonable proposal would permit Defendant to gather the information it needs for its defenses and contemplated decertification motion.

**B. Permitting Discovery from a Random Sample Amounting to 20% of the Class is a Far More Reasonable Approach in the Collective Action Setting.**

The Court should adopt Plaintiffs proposal and order written discovery of a limited number of randomly selected opt-ins.  This approach better aligns with the purpose of collective actions and Federal Rule of Civil Procedure 26.  DSI has already received discovery from the six named plaintiffs.  Plaintiffs have also agreed to proceed with 25 additional depositions of opt-in claimants who will be served with full written discovery in advance of the depositions.  Plaintiffs have agreed to permit Defendant to serve limited written discovery on an additional 15 opt-ins, provided that such opt-ins are randomly selected.  <u>These 40 opt-ins, together with the six named Plaintiffs, upon which discovery has already been served, and the declarations submitted with Plaintiffs' conditional certification motion, comprise a universe of nearly 20% of the total opt-ins</u>.

Courts routinely order sampling of 10% - 15% of the total opt-in class.  For example, in *Cranney v. Carriage Servs.*, the court limited discovery to 10% of the total 300 opt-ins.  According to the *Cranney* court, "[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources." 2008 U.S. Dist. LEXIS 113606, 16 (D. Nev. June 16, 2008). *Cranney* is supported by a phalanx of similar decisions from this district, *see, e.g.*, *Gilmer v. Alameda-Contra Costa Transit Dist.*, 2011 U.S. Dist. LEXIS 17389,  (N.D. Cal. Jan. 13, 2011) (granting plaintiffs' motion for a protective order limiting depositions to 3.69% of opt-in class), and across

the country.[2] The well-reasoned *Cranney* line of cases should be followed in the instant case.

Moreover, many of DSI's cases are distinguishable from the instant case. In *Ingersoll v. Royal Sunalliance USA, Inc.*, the court ordered individualized discovery because only 34 people opted in.[3] This is a far cry from the 248 women who have opted into this case.[4] Likewise, in *Krueger v. New York*, the court permitted universal written discovery solely on the issue of individual damages for the class's ADEA claims. 163 F.R.D. 446, 451 (S.D.N.Y. 1995). This is a separate issue with entirely different considerations than DSI's professed need for individualized discovery to file a class decertification motion. Further, in *Krueger*, the class included only 162 opt-ins, all of whom lived within close proximity to each other. *Id*. at 449 (noting the class of plaintiffs was not "scattered throughout the country."). Additionally, in *Thomas v. Kellogg Co.*,[5] *Coldiron v. Pizza Hut, Inc.*,[6] and *Abubakar v. City of Solano*,[7] the plaintiffs failed to carry their burden to demonstrate individualized discovery would impose undue costs. In fact, in *Coldiron*, the court indicated it may have limited discovery had the plaintiffs made specific objections rather than assert a blanket objection to all discovery. 2004 U.S. Dist. LEXIS at 6. Plaintiffs here have submitted more than blanket objections to the discovery DSI seeks, and have offered a reasonable compromise. Therefore, even when considering DSI's cases, the Court should adopt Plaintiffs' opt-in discovery proposal.

With respect to Plaintiffs' request to randomly select the sample of opt-ins who will be subjected to written discovery, the central purpose of sampling in a class action is to produce a *representative* body of evidence. That purpose cannot be achieved if the representatives are hand-picked by a single party. As such, courts have ordered sampling of randomly selected opt-ins. Specifically, in *Gentrup v. Renovo Servs., LLC*, the court permitted the defendants to depose 16 of 106 opt-ins, and serve written discovery on an additional 22 opt-ins, in addition to the nine named plaintiffs. 2010 U.S. Dist. LEXIS 143203, 27 (S.D. Ohio Aug. 17, 2010). In so doing,

---

[2] *See Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D. N.J. 2013) (ordering written discovery on 10% of the class); *Scott v. Bimbo Bakeries, USA, Inc.*, 2012 U.S. Dist. LEXIS 175016, 6 (E.D. Pa. Dec. 11, 2012) (adopting plaintiffs' proposal to limit written discovery to "a representative number of opt-ins, not to exceed 10% of the final total of opt-ins."); *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2011 U.S. Dist. LEXIS 146056, 6 (W.D. Pa., Dec. 20, 2011) (noting discovery was authorized on 10% of class); *Nelson v. Amer. Standard, Inc.*, 2009 U.S. Dist. LEXIS 113448 (E.D. Tex. Dec. 4, 2009) (limiting discovery to 6.8% of opt-in class); *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (permitting discovery of 6% of opt-in class); *Gross v. Am. Std., Inc.*, 2009 U.S. Dist. LEXIS 113448, 8 (E.D. Tex. Dec. 4, 2009) (limiting discovery to 8% of opt-in class).
[3] 2006 WL 2091097 (W.D. Wash. July 26, 2006). Further, in most other cases allowing individualized discovery, the classes were comprised of far fewer members. *See e.g., Abukar v. City of Solano*, 2008 U.S. Dist. LEXIS 17456, 10 (E.D. Cal. Feb. 22, 2008); *Renfro v. Spartan Computer Servs.*, 2008 U.S. Dist. LEXIS 13194, 3 (D. Kan. Feb. 19, 2008).
[4] Several district courts have ordered representative discovery, even when far fewer class members were at issue. *See, e.g., Gentrup v. Renovo Servs.*, LLC, 2010 U.S. Dist. LEXIS 143203, 27 (S.D. Ohio Aug. 17, 2010) (limiting discovery in class of 106 opt-ins); *Jones v. Hoffberger Moving Servs. LLC*, 2014 U.S. Dist. LEXIS 23788, 7 (D. Md. Feb. 24, 2014) (limiting discovery in class of 39 opt-ins).
[5] 2014 U.S. Dist. LEXIS 134786, 6 (W.D. Wash. Sept. 24, 2014)
[6] 2004 U.S. Dist. LEXIS 23610, 6 (C.D. Cal. Oct. 25, 2004)
[7] 2008 U.S. Dist. LEXIS 17456, 10 (E.D. Cal. Feb. 22, 2008)

the court emphasized that "limiting discovery to a *statistically significant representative sampling* will both reduce the burden imposed on Plaintiffs and afford Defendants a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." *Id.* (emphasis added); *see also Feske v. MHC Thousand Trails Ltd. P'ship*, 2012 U.S. Dist. LEXIS 47236, 8 (N.D. Cal. Apr. 3, 2012) ("[I]n the specific context of class-action discovery, sampling advances the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(C)(iii)."); *Scott v. Bimbo Bakeries, USA, Inc.*, 2012 U.S. Dist. LEXIS 175016, 16 (E.D. Pa. Dec. 11, 2012) ("Written discovery propounded upon a *representative sampling* of opt-in Plaintiffs appropriately balances the needs of Defendants and also takes into account the burden to Plaintiffs and their counsel, a factor that seems to be ignored by Defendants.") (emphasis added). Plaintiffs therefore request that all opt-ins who are subjected to written discovery in this case be randomly selected. At class certification, the Court will benefit from discovery taken from a random sample that tested the claims of a universe of opt-ins that represent the class as a whole.

### C. DSI Will Not Be Prejudiced by Plaintiffs' Reasonable Opt-In Discovery Proposal.

Contrary to DSI's assertions, DSI will not be prejudiced by Plaintiffs' proposal to receive discovery from 20% of the opt-in class. As many courts have already found, individualized discovery is not necessary to mount a defense that the EPA class members are not "similarly-situated." Specifically, in *Gross v. Am. Std., Inc.*, the court held that "there is no reason that all defenses and alleged differences among class members cannot be ascertained and articulated based on the results" of limited opt-in discovery. 2009 U.S. Dist. LEXIS 113448, 9 (E.D. Tex. Dec. 4, 2009). Moreover, in *Morales v. Farmland Foods, Inc.*, the court denied individualized discovery because the defendant:

> [F]ail[ed] to suggest how the representative sampling method already in place is deficient for the purpose of establishing (or refuting) similarity between the opt-in class members and addressing the other issues raised in the lawsuit.

2010 U.S. Dist. LEXIS 131286, 10 (D. Neb. Nov. 30, 2010); *see also O'Toole v. Sears Roebuck & Co.*, 2014 U.S. Dist. LEXIS 49408, 9-10 (N.D. Ill. Apr. 10, 2014) ("There is no reason to think that the defendant in this case could not accomplish what it needs to do with discovery from a lesser number of opt-ins than it is demanding. One ought not to facilitate attempts by large corporations to grind down individual plaintiffs in cases like this.").

In the instant case, a random sampling of the opt-in Plaintiffs from DSI's national field sales force would provide DSI with more than sufficient discovery to support a decertification motion. As discussed above, nowhere in this Court's or Judge Orrick's prior orders permitted Defendant from obtaining discovery from every single opt-in. Moreover, DSI will also have the opportunity to present additional evidence based on documents it will produce, expert reports, and presumably its own declarations, as well as the depositions both parties will take in the ensuing months. DSI has thus failed to explain why discovery is necessary from every single one of the opt-ins or why such individualized discovery would not be wasteful and duplicative. The Court should therefore deny DSI's request to serve written discovery on the entire opt-in class.

### D. The Court Should Utilize its Broad Discretion to Deny DSI's Request.

Courts routinely use their broad discretion to limit discovery precisely in this situation, when "much of the information the defendant needs is likely already in its control" (such as the

documents, witnesses, employment policies, and employment data DSI possesses) and "the marginal returns on discovery do not outweigh the concomitant burden, expense, and bother" imposed on Plaintiffs. *See, e.g.*, *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233-34 (D.N.J. 2013) (citing Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii)); *O'Toole v. Sears Roebuck & Co.*, 2014 U.S. Dist. LEXIS 49408, 10 (N.D. Ill. Apr. 10, 2014). Indeed, pursuant to Fed. R. Civ. P. 26(b)(2)(C), the Court has broad discretion to conduct a proportionality analysis and limit discovery if "the burden or expense of proposed discovery outweighs its likely benefit." This rule of proportionality "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Goodman.*, 292 F.R.D. at 232 (quoting *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989). In light of the exorbitant time, expense, and delay individualized discovery would impose on Plaintiffs and this litigation relative to its minimal gain, the Court should exercise its discretion in this case and deny DSI's request.

*Defendant's Position*

DSI is entitled to seek written discovery from individuals who freely consented to join this action as Plaintiffs. DSI seeks to obtain limited information from each Opt-In Plaintiff that is critical to assessing the merits of her claim and DSI's defenses thereto. Although Plaintiffs oppose DSI's efforts to obtain this basic discovery, they do not (and cannot) argue that the information sought is irrelevant. Indeed, DSI's proposed interrogatories mirror the express language of the EPA. Further, Plaintiffs affirmatively offered much of the same information for each pre-Notice Opt-In from whom they submitted a declaration in support of their Motion. Instead, Plaintiffs assert that it is "unduly burdensome" for each Opt-in Plaintiff to provide simple responses to four, discrete interrogatories. Plaintiffs' argument should be rejected.

This is not the first time DSI has attempted to obtain the discovery it needs to defend against Plaintiffs' claims. When DSI previously sought opt-in discovery, Plaintiffs argued that such discovery should be deferred until after the Court granted conditional certification. *See* Dkt. No. 69. In denying DSI's motion to obtain opt-in discovery, this Court explained, "Should the court grant conditional certification, Defendant will have the opportunity to conduct discovery to prepare for a motion for decertification." Dkt. No. 102 at 5. With conditional certification having been granted months ago and the opt-in period closed, now is the time for DSI to obtain the discovery to which it is entitled.

By the close of the notice period, a total of 248 individuals had filed consents to become party Plaintiffs. DSI promptly proposed an EPA opt-in discovery plan to Plaintiffs, seeking: (1) more fulsome written discovery (six interrogatories and seven requests for production) and depositions of 40 Opt-In Plaintiffs; and (2) the ability to serve only *4* narrowly-tailored interrogatories on the remaining Opt-In Plaintiffs. In other words, DSI proposed a balanced discovery plan whereby it would be able to obtain the discovery it needed to defend against Plaintiffs' claims, but at the same time minimize the burden on Plaintiffs associated with conducting full discovery on all Opt-In Plaintiffs. After lengthy discussions between the parties, and in the interest of compromise, DSI agreed in good faith to further limit the number of Opt-In Plaintiff depositions to 25. DSI also agreed to let Plaintiffs pick 12 of the 25 individuals that DSI would be able to depose. Plaintiffs, however, agreed only to provide responses to written discovery for the 25 deponents and an additional *15* randomly selected Opt-In Plaintiffs. Plaintiffs' position on the scope of opt-in written discovery is not only incongruous with the far-

reaching discovery they demanded in ESI,[8] but also out of step with decisions from courts within the Ninth Circuit permitting written discovery from all opt-ins. For these reasons, DSI respectfully requests that the Court permit it to engage in the discovery it seeks.

### A. The Written Discovery At Issue is Narrowly-Tailored and Consistent With the Type of Discovery Courts Routinely Permit.

As noted above, the dispute before the Court surrounds DSI's ability to serve four (4) interrogatories on individuals who voluntarily elected to participate in this case as Plaintiffs. The interrogatories at issue (which DSI previously provided to Plaintiffs weeks ago) are as follows:

1. Do you believe male employees at DSI were paid more than you for performing similar work?

2. If you answered Interrogatory No. 1 in the affirmative, identify each male DSI employee you believe was paid more than you for performing similar work.

3. If you answered Interrogatory No. 1 in the affirmative, then for each male DSI employee you believe was paid more than you, describe the similar work you believe was performed.

4. If you answered Interrogatory No. 1 in the affirmative, (a) identify each individual you believe has knowledge of your claim that male employee(s) at DSI were paid more than you for performing similar work; and (b) describe in detail the knowledge that he/she has.

There can be no dispute that these interrogatories are limited in nature, impose minimal burden on Plaintiffs to respond, and are directly relevant to this case in that they track the express language of the EPA. *See* 29 U.S.C. § 206(d) (requiring a plaintiff to demonstrate that she earns less than a male employee for work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1415 (9th Cir. 1988) (explaining that the EPA's factors are "separate tests, each of which must be met in order to state a claim under the EPA"). Each of the Plaintiffs upon whom DSI seeks to serve these interrogatories signed a consent form stating under penalty of perjury that they "believe Daiichi Sankyo paid [them] less than men who performed similar work." DSI is entitled to test the veracity of these allegations, which bear directly on its anticipated decertification motion. *See* Order Granting Pls.' Mot. for Cond. Cert. at 8-9 (Dkt. 126) (stating "Whether it is fair to compare the salaries of women and men who are in different tiers or geographic locations . . . is a question to be resolved at the second step of the certification process" and explaining that DSI's defenses, including whether DSI pays different

---

[8] In addition, Plaintiffs have sought - and DSI has provided - broad discovery relating to Plaintiffs' EPA claims, including nationwide data and extensive compensation-related policies and documents. DSI also has agreed to provide email data for every regional director and area business manager nationwide for the class period. DSI also anticipates that there will be additional related discovery in the coming months, including corporate representative testimony regarding DSI's compensation practices. Against this backdrop, the discovery DSI seeks, by contrast, is minimal and bears directly on each Opt-In Plaintiff's individual claim, as well as Plaintiffs' broader assertion that they are similarly situated to each other and other sales representatives and district managers employed by DSI nationwide.

wages for different positions, that job duties vary between divisions and job titles, and that different positions are compensated differently based on location, are matters to be determined at the second stage of the certification process.").

Moreover, DSI's proposed interrogatories seek the same information that Plaintiffs provided in declarations in support of their motion to conditionally certify an EPA collective. *See* Pls.' Mot. for EPA Cond. Cert., Ex. 1-31, at Dkt.78-2 (Mar. 6, 2014); Pls.' Reply Mem. in Support of Mot. for EPA Cond. Cert., Exs. 1-4, at Dkt. 119-1 (Apr. 28, 2014). In each declaration, an Opt-In Plaintiff identified a male DSI employee that she contended was paid more for doing similar work. Surely the remaining Opt-In Plaintiffs should be required to provide the same information. Plaintiffs' declarations are a tacit acknowledgement that individual comparator information is critical for each opt-in Plaintiff. And Plaintiffs already admitted that "DSI's competing evidence only comes into play . . . when DSIs move [sic] for decertification."[9] Dkt. 69 at 2. It strains credulity for Plaintiffs to claim that it will be unduly burdensome for them to provide similar information for any more than 40 individuals, given that they readily provided such information for 35 individuals in support of their EPA motion.

In a Section 216(b) collective action, each party-plaintiff who consents to join is expected to participate fully in the litigation, including in the discovery process. *See Chavez v. Wis Holdings Corp.*, No. 07-CV-1932 L NLS, 2013 WL 2181214, at *2 (S.D. Cal. May 20, 2013) ("This Court is of the opinion that a party who has chosen to opt-in to a collective action has an obligation to participate in the litigation, if necessary. Such a plaintiff has "freely chosen to participate," and there is no indication that these plaintiffs do not have "relevant information with respect to the claims and defenses in this action.").

Consistent with this basic principle, California district courts routinely allow individual discovery from all opt-ins in collective actions because such discovery is critical to affirmative defenses, damages, and issues related to decertification of the collective action. *See, e.g.*, *Coldiron v. Pizza Hut, Inc.*, No. 03-05865, 2004 WL 2601180 (C.D. Cal. Oct. 25, 2004) (granting defendant's motion to compel individualized discovery in requests for admissions, requests for production, and interrogatories for *all* 306 opt-ins); *Abubakar v. City of Solano*, No. 06-2268, 2008 WL 508911, at *3 (E.D. Cal. Feb. 22, 2008) (denying plaintiffs' motion for protective order limiting the discovery or amount of depositions, and ordering plaintiffs to respond to requests for production and interrogatories served on *all* 160 opt-ins); *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083, 2010 WL 3218598 (D. Ariz. Aug. 13, 2010) (allowing basic, individualized interrogatories for entire opt-in class).[10]

---

[9] Plaintiffs wrongly rely on a case from the Eastern District of Texas to suggest that "many courts have already found individualized discovery is not necessary to mount a defense that the EPA class members are not 'similarly-situated.'" (citing *Gross*). *Gross*, however, was not an EPA case at all, but rather a suit to recover unpaid overtime wages in which the parties already agreed to have 91 Discovery Plaintiffs. 2009 WL 4730166, at *1. Moreover, the court's analysis is contrary to cases decided by courts in the Ninth Circuit, cited *infra*.

[10] Plaintiffs seek to distinguish *Coldiron* by suggesting that the court "may have limited discovery had the plaintiffs made specific objections." But *Coldiron* did not indicate it would limit the number of opt-ins that could be served with written discovery. Rather, it indicated that it may have limited certain "specific requests" had plaintiffs specifically objected to them. 2004 WL 2601180, at *2. Similarly, Plaintiffs argue *Abubakar* is distinguishable because it involved "far fewer class members;" however, *Abubakar* required plaintiffs to respond to 320 sets of

Plaintiffs contend that DSI only should be permitted to serve written discovery on a small subset of the Opt-In Plaintiffs. That argument lacks merit where, as here, the discovery DSI seeks to propound is very limited in nature and where a relatively modest number of individuals (242 opt-ins out of a universe of 1,390) elected to sign consents to join this action as Plaintiffs. Accordingly, limiting written discovery to just a handful of randomly-selected opt-ins is not appropriate. *See Ingersoll v. Royal Sunalliance USA, Inc.*, 2006 WL 2091097 (W.D. Wash. July 26, 2006) (permitting individualized discovery from all 34 opt-ins and distinguishing cases involving thousands of class members); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 449 (S.D.N.Y. 1995) ("This is not a class consisting of thousands of absent class members, scattered throughout the country, perhaps unaware of the litigation itself. This case involves a relatively small group of 162 people, each of whom has freely chosen to participate and each of whom has relevant information with respect to the claims and defenses in this action."); *Renfro v. Spartan Computer Servs., Inc.*, 2008 WL 474253 (D. Kan. Feb. 19, 2008) (permitting 27 depositions, and potential individualized discovery for all 100 opt-in plaintiffs because plaintiffs had failed to show undue burden with particularized facts and because each plaintiff to be deposed had consented to participate in the lawsuit).

Even Plaintiffs' cases support the idea that written discovery of every opt-in is appropriate where, as here, there is a manageable number of opt-in plaintiffs and the discovery sought is straightforward and limited. In *Scott*, for example, while the court denied defendants' request to serve discovery on 650 opt-ins, it specifically recognized that its analysis might be very different if there were "*significantly fewer opt-on plaintiffs than the 650 in the case at hand*." Indeed, *Scott* expressly noted that in *Coldiron*, the Central District of California allowed for written discovery of all 306 opt-in plaintiffs.[11] *Scott* also distinguished *Stickle* because, in *Stickle*, defendant's interrogatories were not overly burdensome since they "only required answering *eleven straightforward questions*." *Id*. at * 9. Similarly, *Cranney* denied defendant's requested discovery, which was "extremely detailed," included 13 interrogatories and requests for production of documents, and sought information that was "simply not relevant to this case at this stage of the proceedings." 2008 WL 2457912, at *1 (D. Nev. June 16, 2008). Here, DSI is only requesting that 213 opt-in plaintiffs answer *four* straightforward questions.

Stated simply, Plaintiffs cannot credibly claim that the written discovery at issue is somehow irrelevant or unduly burdensome. "The burden is upon the party seeking [a protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063-64 (9th Cir. 2004). Plaintiffs cannot meet such a burden here. DSI therefore respectfully requests that the Court permit it to proceed with serving the limited interrogatories on all opt-ins who it will not otherwise depose.

---

discovery requests (interrogatories and requests for production) on behalf of 160 opt-in plaintiffs (only 50 fewer than are included here). Moreover, the court did not suggest that the discovery was proper only because of the class size. Indeed, it stated that it found *Coldiron* persuasive when it ordered discovery from 305 opt-in plaintiffs. 2008 WL 508911, at *2.

[11] *See also Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013) (denying request for written discovery from each opt-in because there were 572 opt-in plaintiffs, and defendants sought to serve interrogatories, requests for production, and requests for admission that only would yield information that is "likely already in [defendants] possession and control"). Others cases are not on point. *E.g., Feske v. MHC Thousand Trails Ltd. P'ship*, 2012 WL 1123587, at *2 (N.D. Cal. Apr. 3, 2012) (ordering defendant to provide contact information for more than 2,000 putative class members).

| | | |
|---|---|---|
| 1 | Dated:  November 19, 2014 | Respectfully submitted, |
| 2 | | */s/ Felicia Medina*<br>Felicia Medina, on behalf of |
| 3 | | Plaintiffs and the Class |
| 4 | | */s/ Sari M. Alamuddin*<br>Sari M. Alamuddin, on behalf of |
| 5 | | Defendant |