UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA WELLENS, | No. C-13-00581-WHO (DMR) |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 146]** |
| v. | |
| DAIICHI SANKYO INC, | |
| Defendant(s). | |

Before the court is a joint discovery letter filed by Plaintiffs and Defendant Daiichi Sankyo, Inc. [Docket No. 146.] At issue are four interrogatories that Defendant seeks to serve on 213 opt-in Plaintiffs. The court held a hearing on the letter on December 18, 2014. This summarizes the rulings made by the court during the hearing.

## I. BACKGROUND

**A. Factual Allegations**

Defendant manufactures and sells cardiovascular, diabetes, and metastatic melanoma therapies and pharmaceuticals. Compl. [Docket No. 1] at ¶ 1. Plaintiffs are current and former female sales employees of Defendant. *Id.* at ¶¶ 14-19. Plaintiffs bring class and collective claims alleging violations of Title VII, the California Fair Employment and Housing Act, the Equal Pay Act, the California Equal Pay Act, and the California Unfair Business Practices Act, in their

individual capacities, and on behalf of certain current, former, and future female sales employees of Defendant. *See generally* Compl.

### B. Procedural History

There are six named Plaintiffs in this lawsuit. On May 22, 2014, Judge Orrick granted conditional class certification. [Docket No. 126.] Notice of the lawsuit was then sent to 1,390 female employees of Defendant. Of those, 209 filed consent forms to opt-in to the lawsuit as Plaintiffs. In addition, 33 individuals opted in to the lawsuit before the notice went out. Thus, there are a total of 248 Plaintiffs.

### C. Discovery Dispute

The parties have agreed that Defendant may take depositions of the six named Plaintiffs as well as 25 opt-in Plaintiffs. Of these 25 opt-in Plaintiffs, twelve deponents will be chosen by Plaintiffs.

However, the parties do not agree on the number of Plaintiffs from whom Defendants may seek written discovery. Specifically, Defendant seeks responses for four interrogatories[1] from the 213 opt-in Plaintiffs who did not submit declarations in support of Plaintiff's motion for conditional class certification.[2] Plaintiffs propose that Defendant be permitted to take written discovery from

---

[1] The four interrogatories are as follows:

1. Do you believe male employees at DSI were paid more than you for performing similar work?

2. If you answered Interrogatory No. 1 in the affirmative, identify each male DSI employee you believe was paid more than you for performing similar work.

3. If you answered Interrogatory No. 1 in the affirmative, then for each male DSI employee you believe was paid more than you, describe the similar work you believe was performed.

4. If you answered Interrogatory No. 1 in the affirmative, (a) identify each individual you believe has knowledge of your claim that male employee(s) at DSI were paid more than you for performing similar work; and (b) describe in detail the knowledge that he/she has.

[2] Plaintiffs' motion for conditional class certification included thirty-one declarations, six from the named Plaintiffs and 25 from former or current employees. [Docket No. 78.] Plaintiffs supplemented their motion by providing six more declarations from former or current employees. [Docket No. 116.] At the hearing, Defendant confirmed that it did not seek interrogatory responses from any of these declarants at this time, because the declarations contained adequate information for the purpose of challenging class certification.

only 40 opt-in Plaintiffs (i.e., the 25 opt-in Plaintiffs that Defendants will be permitted to depose, plus 15 additional randomly selected opt-in Plaintiffs).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citations omitted).

## III. DISCUSSION

The parties do not dispute that the discovery requested by Defendant is relevant to the merits of Plaintiffs' claims and/or Defendant's defenses, as well as to Defendant's anticipated challenge to class certification. *See Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010) ("To maintain a collective action under the [Fair Labor Standards Act ("FLSA")][3] a plaintiff must demonstrate that the putative collective action members are similarly situated . . . . [A]fter discovery is complete, . . . the defendants may move to decertify the class. In this step, the court makes a factual determination about whether the plaintiffs are similarly situated by weighing such factors as (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations.").

Instead, the parties focus on the burden of producing the requested discovery and the potential prejudice to Defendant of limiting the requested discovery. Defendant contends that the discovery it seeks is limited and the number of individuals from whom it seeks discovery is

---

[3] The Equal Pay Act is an amendment to the FLSA. 29 U.S.C. § 206.

"relatively modest," such that "Plaintiffs cannot credibly claim that the written discovery at issue is somehow irrelevant or unduly burdensome." Letter at 8. Plaintiffs respond that Defendant's proposal would require "facilitating and reviewing interrogatory responses and document production from all 213 remaining opt-ins from around the country" and "would consume enormous time and resources." Letter at 2. "Even if written discovery is limited to four interrogatories, Plaintiffs' counsel would have to facilitate and review responses to close to one thousand interrogatories in the aggregate," which would take several months. *Id.* Plaintiffs argue that it would be more reasonable to proceed with their proposal, under which Defendants would be able to take the depositions of 12.5% of Plaintiffs (6 named plaintiffs and 25 opt-ins out of 248 total Plaintiffs) and written discovery from 18.5% of Plaintiffs (6 named plaintiffs and 40 opt-ins out of 248 total Plaintiffs).

"The federal courts have adopted various approaches to the scope of discovery permitted in FLSA actions." *Cranney v. Carriage Servs., Inc.*, No. 07-CV-1587-RLH PAL, 2008 WL 2457912, at *2 (D. Nev. June 16, 2008) (summarizing cases). Some courts have treated opt-in plaintiffs in a collective action as ordinary party plaintiffs subject to the full range of discovery permitted by the Federal Rules of Civil Procedure, and have permitted the defendant to seek certain discovery from all opt-in plaintiffs. *See, e.g.*, *Ingersoll v. Royal & Sunalliance USA, Inc.*, No. 05-cv-1774 MAT, 2006 WL 2091097, at *3 (W.D. Wash. July 25, 2006) (permitting defendant to obtain discovery from both named plaintiffs and all 34 opt-ins because "Plaintiffs fail to adequately support their contention that discovery relating to a total of thirty-six individuals would be unduly burdensome" and "ignores the fact that this matter involves a relatively small total number of named and opt-in plaintiffs"); *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865 TJH MCX, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (requiring all 306 opt-ins to respond to interrogatories, requests for production of documents ("RFPs") and requests for admission ("RFAs")); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 448 (S.D.N.Y. 1995) (requiring all 162 opt-ins to respond to interrogatories); *Renfro v. Spartan Computer Servs., Inc.*, No. 06-2284-KHV-DJW, 2008 WL 474253 (D. Kan. Feb. 19, 2008) (requiring all of the over 100 opt-ins to respond to RFPs and interrogatories); *Abubakar v. City of Solano*, No. 06-cv-2268 LKK EFB, 2008 WL 508911, at *1 (E.D. Cal. Feb. 22, 2008) (requiring all 150 opt-ins to respond to defendant's RFPs and interrogatories).

"However, other courts have held that the same standards governing discovery in Rule 23 class actions should be applied to conditionally certified FLSA actions, and that discovery should be limited to class-wide and class-based discovery." *Cranney*, 2008 WL 2457912 at *2. These courts have limited individualized discovery, reasoning that individualized discovery would undermine the purpose and usefulness of both class actions and collective actions, and instead required only a representative sampling of the opt-in plaintiffs to respond to discovery. *See, e.g., id.* (limiting discovery from plaintiffs to 10% of approximately 300 opt-in plaintiffs); *Morales v. Farmland Foods, Inc.*, No. 08-CV-504, 2010 WL 4941708, at *4 (D. Neb. Nov. 30, 2010) (limiting written discovery to random 15% sample of 296 opt-ins, and denying defendant's motion to compel discovery from any opt-ins who had provided testimony for pretrial motions because "allowing individual discovery from each declarant is inconsistent with the court's prior order [limiting opt-in discovery to 15% random sample] and goes outside the bounds of essential discovery by negating the purpose behind limited discovery in representative actions . . . . [T]he defendant need not obtain similar discovery from mere declarants. The defendant has other means to challenge affidavits filed by the plaintiffs relative to motions filed."); *Gentrup v. Renovo Servs., LLC*, No. 07-CV-430, 2010 WL 6766418, at *7 (S.D. Ohio Aug. 17, 2010) (rejecting defendant's request for full discovery from all 106 opt-ins and granting representative discovery consisting of written discovery from 31 plaintiffs and depositions from 16; "Individualized discovery undermines the purpose and utility of collection actions and therefore limiting discovery to a statistically significant representative sampling will both reduce the burden imposed on Plaintiffs and afford Defendants a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses"); *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354 (S.D. Ohio 2006) (denying defendant's request to depose 150 of 1,500 opt-in plaintiffs and receive written discovery from all opt-ins, and limiting discovery to a statistically significant representative sampling instead); *Nelson v. Am. Standard, Inc.*, No. 08-CV-390-TJW-CE, 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (rejecting defendant's request for written discovery from all 1,328 plaintiffs and ordering discovery from a "statistically acceptable representative sample" of only 91 plaintiffs).

The undersigned agrees with the courts that have held that requiring full discovery from all opt-ins undermines the purpose and utility of collective actions. Defendant does not need discovery from every opt-in Plaintiff in order to mount a challenge to class treatment. In determining how much individualized discovery Defendant should be permitted to conduct at this juncture, this court has considered several factors. First, the court notes that Plaintiffs are geographically dispersed, which adds to the burden of responding to discovery.[4] *See Gentrup*, 2010 WL 6766418 at *7 (limiting discovery from the 106 opt-in plaintiffs where they were geographically isolated, were spread across 20 states, and worked for three different companies related to defendant). The total number of opt-in plaintiffs is also relevant, for the larger the class, the more burdensome it will be to prepare discovery responses. *Compare Ingersoll*, 2006 WL 2091097 at *3 (permitting defendant to obtain discovery from both named plaintiffs and all 34 opt-ins) *with Morales*, 2010 WL 4941708 at *4 (limiting written discovery to random 15% sample of 296 opt-ins). In this case, the number of opt-in plaintiffs (248) is sizeable, but not overwhelmingly large.

The court also considers the type of discovery sought. Defendant sought to serve four interrogatories, then agreed to drop the fourth one. The three remaining interrogatories go to the heart of the case; they require Plaintiffs to identify the male comparators who allegedly were paid more for performing similar work. Thus, the discovery is highly relevant, and not as burdensome as it might otherwise be. This weighs in favor of allowing discovery of a greater percentage of the class. Similarly, the fact that some of the claims involve more than trivial amounts[5] weighs in favor of permitting more thorough discovery from the opt-in Plaintiffs, since one policy concern underlying collective actions (i.e., to provide relief for plaintiffs whose individual claims may be so small that individual litigation is not worthwhile) is less implicated in this scenario.

---

[4] Although Plaintiffs' written argument was somewhat cryptic on this point, at the hearing, Plaintiffs' counsel provided additional detail: the 248 Plaintiffs work from their home offices in all of Defendant's seven to nine national regions. While counsel did not know how many Plaintiffs worked in which states, she stated that Plaintiffs are located in more than 25 states, and no single state had a disproportionate number of Plaintiffs.

[5] At the hearing, Plaintiffs' counsel estimated that each Plaintiff was paid $1,000 to $10,000 per year less than their male counterparts during the three-year class period, making their equal pay lost wage claims worth approximately $3,000 to $30,000 each.

On the other hand, Defendant does not contend that it will be prejudiced or that it will not be afforded a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses if it is limited to discovery from only a representative sample of opt-in Plaintiffs. At the hearing, Defendant's counsel admitted that it does not require discovery from all opt-in Plaintiffs to make a case for decertification, given that Defendant will have access to discovery from some of the Plaintiffs and will also have expert analysis and documentary evidence (e.g., time sheets and human resources evaluations) that can support its argument.

Accordingly, the court denies Defendant's request for interrogatory responses from all of the 213 opt-in Plaintiffs who have not already submitted a declaration. However, the court finds also that Plaintiffs' proposal is too limited. The court holds that Defendant is entitled to responses to Defendant's first three interrogatories from 37 opt-in Plaintiffs selected by Defendant. With this additional discovery, Defendant will have evidence from a sizeable portion of the class, presented through various means: the six named Plaintiffs will provide full discovery, including deposition testimony and written discovery responses; approximately 39 opt-in Plaintiffs have provided sworn declarations containing essentially the information sought by Defendant in its interrogatories; an additional 25 opt-in Plaintiffs will be deposed; and 37 opt-in Plaintiffs will provide responses to Interrogatory Nos. 1-3. Assuming that some opt-in Plaintiffs selected for deposition will overlap with those who have already provided declarations, the total number of unique Plaintiffs from whom Defendant will have the opportunity to obtain evidence on issues pertinent to the propriety of class treatment will be approximately 99, representing 40% of the class.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to compel is **granted in part**. Defendant may select 37 opt-in Plaintiffs who must respond to Defendant's Interrogatory Nos. 1-3. The parties shall meet and confer regarding the selection of these plaintiffs and the time line for production of their responses.

IT IS SO ORDERED.

Dated: December 29, 2014

DONNA M. RYU
United States Magistrate Judge

7